Ralph G. Wootan et al. [1] v. Commissioner. Wootan v. Commissioner
Docket Nos. 35605-35608.
United States Tax Court
T.C. Memo 1955-191; 1955 Tax Ct. Memo LEXIS 163; 14 T.C.M. (CCH) 750; T.C.M. (RIA) 55191; June 30, 1955
*163 1. Broadway Drug, Inc. was incorporated in Arkansas in 1937. Petitioner acquired the corporate charter in 1938. The corporate organization was not perfected. During the years 1939-1946, petitioner carried on a business under the name of Broadway Drug, Inc. The business was owned and controlled solely by petitioner. Corporate income tax returns were filed for Broadway Drug, Inc. for the years 1939-1946. The corporate charter of Broadway Drug, Inc. was revoked on April 9, 1941 by the state of incorporation. The returns which were filed for the years 1939, 1940, and 1941 were the returns required by law. Held, Broadway Drug, Inc., Dissolved, is taxable as a corporate entity only for the period January 1, 1939 through April 9, 1941, and after April 9, 1941, it did not become an association taxable as a corporation. Held, further, Broadway Drug, Inc., did not file false or fraudulent returns for 1939, 1940, and 1941, and the assessment of deficiencies for those years is barred by the statute of limitations. 2. Petitioner operated drug stores as a sole proprietor during the years 1941-1946. He also received income from rental properties. Petitioner failed to keep accurate and complete *164 records of the income from his drug store business and from rental properties. Held, that respondent was justified in resorting to the net worth method of computing taxable net income for the years involved and the petitioner has failed to meet his burden of proving that respondent's reconstruction of income was incorrect. Held, further, petitioner filed false or fraudulent income tax returns for each of the years 1943-1946, inclusive, and part of the deficiency for each year is due to fraud with intent to evade tax. John E. Marshall, Esq., and Charles E. Dierker, Esq., 510 First National Bank Building, Oklahoma City, Okla., for the petitioners. W. B. Riley, Esq., for the respondent. HARRON *165 Memorandum Findings of Fact and Opinion HARRON, Judge: In Docket No. 35606, Broadway Drug, Inc., Dissolved, the Commissioner originally determined deficiencies in income tax and in declared value excess profits tax, as set forth below, and he added penalties to the deficiencies under section 293(b) of the 1939 Code, for fraud. By amendment to his pleadings, the Commissioner has made claim for 25 per cent additions to taxes under section 291(a) of the 1939 Code, for each of the years 1939 to 1943, inclusive, and for 1945 and 1946, upon his determination that the corporation returns which were filed were not returns required by law. The deficiencies and penalties determined by the Commissioner are as follows: Broadway Drug, Inc., Dissolved
Income Tax
Additions
Additions
Year
Deficiency
Sec. 293(b)
Sec. 291(a)
1939
$ 268.95
$ 134.48
$ 67.24
1940
384.54
192.27
96.14
1941
690.76
345.38
172.69
1942
663.89
331.95
165.97
1943
423.97
211.99
105.99
1944
134.40
67.20
1945
377.28
188.64
94.32
1946
1,975.74
987.87
493.94
Total
$4,919.53
$2,459.78
$1,196.29
D.V.E.P.T.
Deficiency
1939
$ 244.70
$ 122.35
$ 61.18
1940
326.96
163.48
81.74
1941
419.34
209.67
104.84
1942
335.68
167.84
83.92
1943
209.00
104.50
52.25
1944
56.11
28.06
1945
184.35
92.18
46.09
Total
$1,776.14
$ 888.08
$ 430.02
*166 Broadway Drug Company was operated by Ralph G. Wootan. In Docket No. 35608, Ralph G. Wootan, Transferee, the Commissioner determined that Ralph G. Wootan is liable to the extent of $4,987.31 for deficiencies, plus interest, of Broadway Drug Company. In Docket Nos. 35605 and 35607, Ralph G. Wootan (1941), and Ralph G. Wootan and Corrinne Wootan (1942-1946), the Commissioner originally determined income tax deficiencies and 50 per cent additions for fraud under section 293(b) of the 1939 Code as are set forth below: Ralph and Corrinne Wootan
Year
Deficiencies
Sec. 293(b)
1941
$ 27.44
$ 13.72
1942
204.93
102.47
1943
2,102.02
1,051.01
1944
6,745.12
3,372.56
1945
1,267.48
633.74
1946
3,632.33
1,816.16 The Commissioner has made claim in his amended answer for increase in the deficiency for 1943, and in the addition thereto, to $2,697.97, and $1,348.98, respectively. The Commissioner resorted to the increase in net worth and expenditures method of determining the taxable net income of Ralph G. Wootan for the years 1941-1946, inclusive. The issues in Docket Nos. 35605 and 35607 concern the propriety of using the net worth method of computing *167 the net income of the petitioners; the amount of undeposited cash savings on hand, if any, at the beginning of the net worth period; whether there was understatement of taxable income for any of the years 1941-1946, inclusive; whether Ralph G. Wootan, in 1946, formed a partnership for the operation of Broadway Drug Company and two other drug stores; the correctness of the Commissioner's determinations of fraud; and the statute of limitations. In Docket No. 35606, Broadway Drug Inc., the issues relate to the taxable status of Broadway Drug during the period 1939-1946, inclusive, as either a corporation or a sole proprietorship; whether there was understatement of its income for any of the years, 1939-1946, inclusive; the correctness of the Commissioner's determinations of fraud; whether Broadway Drug failed to file, for all of the years involved except 1944, such returns as are required by law; and the statute of limitations. Findings of Fact Ralph Wootan filed an individual return for 1941. He filed joint returns with his wife, Corrinne, for the years 1942-1946, inclusive. All of the returns were filed with the collector for the district of Oklahoma. Ralph and Corrinne Wootan *168 are, and at all times material have been, residents of Oklahoma City, Oklahoma. All of the issues relate to Ralph, only. Therefore, he is referred to hereinafter as the petitioner. Ralph was born in 1909. He graduated from high school, and he attended Oklahoma Baptist University for one semester in 1929. He married Corrinne in 1935. They have three children. Two were born before 1941; one was born in 1944. Ralph received a license from the State of Oklahoma as a registered pharmacist in 1935. He worked in retail drug stores from 1932 to 1938 as either a clerk, manager, or pharmacist. Since 1938, he has been engaged in the business of owning and operating retail drug stores in Oklahoma City. The first retail drug business he acquired was Broadway Drug. He purchased this business from R. H. Kitchen on February 28, 1938. In these proceedings Broadway Drug is frequently referred to as Store No. 1. Docket No. 35606, Broadway Drug, Inc., Dissolved At some time prior to October 7, 1937, H. H. Kitchen purchased a drug store business in Okmulgee, Oklahoma at a bankrupt sale. He moved the business to Oklahoma City and operated the business under the name of Broadway Drug Store. In *169 the latter part of 1937, Kitchen employed Wootan as a pharmacist. Wootan became the manager of the store. Kitchen contemplated operating the business as a corporation and caused it to be incorporated in the state of Arkansas. On October 7, 1937, the state of Arkansas issued Articles of Incorporation to a corporation known as Broadway Drug, Inc. The incorporators were Kitchen, his wife, and C. A. Warden. Kitchen was the real party in interest. The incorporators did not pay in any capital or transfer any property to the corporation, and no capital stock was issued. Kitchen continued, after October 7, 1937, to operate the Broadway Drug Store (Broadway Drug, Inc.) as a sole proprietorship until he sold the business. On February 25, 1938, Kitchen sold the business known as Broadway Drug to Wootan. In connection with the sale, Kitchen, his wife, and Warden assigned to Wootan, his wife, and his brother, Earl Wootan, their interest in the corporation, Broadway Drug, Inc., for a nominal consideration. The purchase price of the assets of the business, Broadway Drug, was $2,600. Wootan began operation of the Broadway Drug business on March 20, 1938, and he operated the business as a sole *170 proprietorship until the end of 1938. On and after January 1, 1939, the business was carried on under the name of Broadway Drug, Inc. On January 1, 1939, the corporation acquired from petitioner the assets which he theretofore had employed in his business as proprietor of Broadway Drug. Petitioner did not execute a formal conveyance of the assets to the corporation, and the corporation did not issue any capital stock in exchange for the assets. No other capital was ever contributed to the corporation. Broadway Drug, Inc. qualified as a foreign corporation to transact business within the state of Oklahoma on July 29, 1939. The corporate organization of Broadway Drug, Inc. was never perfected. An organization meeting attended by petitioner, his wife, and Earl Wootan, his brother, was held on December 2, 1938. On both July 10 and 11, 1939, the same parties held what purported to be a meeting of stockholders. The resolutions passed at the aforementioned meetings were never carried out. No capital was contributed to the corporation by either petitioner's wife or his brother Earl. No capital stock was ever issued by the corporation. No officers or directors were duly elected or appointed. *171 Broadway Drug, Inc. was at all times material hereto under the sole ownership, management, and control of the petitioner, Ralph Wootan. On April 9, 1941, the charter of Broadway Drug, Inc. was revoked for nonpayment of franchise taxes, and the corporation was dissolved, by proclamation of the Governor of Arkansas. However, petitioner did not learn of the proclamation until some time in 1952. Wootan operated the Broadway Drug business under its corporate name, Broadway Drug, Inc., during the years 1939-1946, inclusive, during which period annual corporation license tax returns were filed with the State of Oklahoma. Federal corporation income tax returns, Form 1120, were filed for Broadway Drug, Inc. for the years 1939-1946, inclusive, with the collector for the district of Oklahoma. No dividends were ever declared or paid by the corporation, Broadway Drug, Inc., but at least some part of the earnings or profits of Broadway Drug, Inc. were withdrawn by Wootan for his personal use during the years in question. The accounting records of Broadway Drug, Inc. consisted of a single entry, multi-columnar journal which was set up to record cash receipts and disbursements in daily *172 transactions. The journal record for the years involved contained numerous inaccuracies and errors. Totals on the books of columns of entries did not equal the actual totals of entries in a great many instances. The total amounts of "Cash Register Readings" were frequently understated on the books. No accounting records of annual inventories or of depreciable assets of Broadway Drug were maintained. Each corporate income tax return which was filed for Broadway Drug, Inc., for the years 1939-1946, inclusive, reported a net loss. Broadway Drug, Inc. engaged in business under a valid corporate charter during the years 1939 and 1940, and until April 9, 1941. The corporation income tax returns of Broadway Drug, Inc. for each of the years 1939, 1940, and 1941 were signed and sworn to by Ralph G. Wootan, as president. The corporation did not have a treasurer or chief accounting officer. The returns for those years were filed timely. The Commissioner mailed notices of deficiencies of Broadway Drug, Inc. for the years which included 1939, 1940, and 1941, on April 20, 1951. The Commissioner also mailed a notice of deficiency in transferee liability to Ralph G. Wootan, transferee of *173 Broadway Drug, Inc., on April 20, 1951. The Commissioner determined deficiencies in income tax and declared value excess profits tax of Broadway Drug, Inc. for 1939, 1940, and 1941. In determining the deficiencies, the Commissioner, among other things, decreased the cost of goods sold in each year. He did not use inventories in determining the cost of goods sold in each year. Broadway Drug, Inc. did not file false or fraudulent returns with intent to evade tax for 1939, 1940, and 1941. No part of a deficiency in tax determined against Broadway Drug, Inc. for 1939, 1940, and 1941 is due to fraud with intent to evade tax. The returns of Broadway Drug, Inc. for 1939, 1940, and 1941 were filed as required by law. The determinations of deficiencies in taxes against Broadway Drug, Inc. for 1939, 1940, and 1941 are barred by the statute of limitations. The business conducted under the name, Broadway Drug, Inc., after April 9, 1941 through the succeeding years to the end of 1946, was conducted under the sole ownership, management, and control of Ralph G. Wootan; it was not an association. Docket Nos. 35605; 35607, Ralph and Corrinne Wootan In February or March 1939, Ralph acquired *174 the business known as Ralph's Drug Store. It is frequently referred to as Store No. 2. In April or May 1946, Ralph acquired a business known as Elder Drug Store. It is frequently referred to as Store No. 3. In 1937, Ralph acquired property in Oklahoma City at 13th and Kelham Street on which two houses were located. He used one house as his family residence. He remodelled the other house into two apartments which he rented. In 1943, Ralph purchased property at 1720 N.W. 34th Street in Oklahoma City on which two houses were located. He rented one of the houses. During the years 1940-1946, inclusive, the only sources of petitioners' income were the drug store businesses and the rental properties. The Commissioner determined the amount of petitioner's taxable net income for each of the years 1941-1946, inclusive, by the increase in net worth and expenditures method. During the trial of these proceedings, the parties agreed upon the amounts of various items constituting either assets or liabilities at the end of certain years. The parties have stipulated about the following: (1) Cash paid for insurance premiums during 1941, 1942, 1943, and 1946. (2) The amounts of balances of *175 bank accounts at the end of 1944, 1945, and 1946. (3) The amounts of accounts payable (trade) at the end of 1944, 1945, and 1946. (4) The amount of petitioners' liability for accrued taxes at the end of 1946. (5) That $72.02, the amount of an alleged net operating loss carry-back from 1947, should be eliminated from the year 1945, in a revised net worth statement, as a loss deduction. On the basis of these stipulations, the Commissioner has recomputed the amounts of petitioners' taxable net income for the years 1941-1946, in a revised net worth statement, and he now claims income tax deficiencies and fraud penalties in amounts which are to be computed under Rule 50 on the basis of the recomputations of taxable net income appearing in his revised net worth statement. The entire original and revised net worth statements are incorporated herein by reference. The Commissioner has determined in his revised net worth statement that petitioners' taxable net income for each of the years involved was as is set forth in the following schedule, which also shows the net income reported in the petitioners' returns. The following schedule also sets forth the amounts of petitioners' *176 unreported income as determined by the Commissioner in his revised net worth statement. Amount of
Net Income
Net Income
Unreported
Year
Determined
per Return
Income
1941
$ 2,639.57
$1,125.35
$ 1,514.22
1942
3,067.86
758.93
2,308.93
1943
11,557.37
1,826.80
9,730.57
1944
18,865.64
(2,608.17)
21,473.81
1945
8,232.08
1,560.58
6,671.50
1946
11,875.88
2,701.67
9,174.21
Total
$56,238.40
$5,365.16
$50,873.24
The respondent's original and revised net worth statements, in abbreviated form, are as follows: Respondent's Original Net Worth Statement
1941
1942
1943
Total assets - at cost
$11,153.31
$11,246.00
$20,052.40
Total liabilities (including
depreciation reserves)
4,876.09
4,386.31 **
7,262.97
Net worth
$ 6,277.22
$ 6,859.69 **
$12,789.43
Annual Increase in Net
Worth
$ 89.02 *
$ 582.47 **
$ 5,929.74 **
Add: Living expenses (in-
cluding premiums)
2,592.65
2,692.65
4,292.97
Total Increase
$ 2,681.67
$ 3,275.12 **
$10,222.71 **
Less: Nonbusiness deduc-
tions as claimed in return
0.00
201.78
463.09
Net Income Before Adjust-
ment
$ 2,681.67
$ 3,073.34 **
$ 9,759.62 **
Less: 50% of capital gain
upon liquidation of Broad-
way Drug, Inc. as of
12/31/46
Net operating loss carry-
back from 1947
Net income as adjusted
$ 2,681.67
$ 3,073.34 **
$ 9,759.62 **
Net income as reported
1,125.35
758.93
1,826.80
Amount of adjustment
$ 1,556.32
$ 2,314.41 **
$ 7,932.82 **
*177 Respondent's Original Net Worth Statement
1944
1945
1946
Total assets - at cost
$29,303.74
$30,985.20
$90,327.82
Total liabilities (including
depreciation reserves)
2,799.15
3,216.58
49,997.81
Net worth
$26,504.59
$27,768.62
$40,330.01
Annual Increase in Net
Worth
$13,715.16
$ 1,264.03
$12,561.39
Add: Living expenses (in-
cluding premiums)
7,101.83
6,664.19
4,651.06
Total Increase
$20,816.99
$ 7,928.22
$17,212.45
Less: Nonbusiness deduc-
tions as claimed in return
420.53
393.10
440.10
Net Income Before Adjust-
ment
$20,396.46
$ 7,535.12
$16,772.35
Less: 50% of capital gain
upon liquidation of Broad-
way Drug, Inc. as of
12/31/46
1,193.65
Net operating loss carry-
back from 1947
72.02
Net income as adjusted
$20,396.46
$ 7,463.10
$15,578.70
Net income as reported
(2,608.17)
1,560.58
2,701.67
Amount of adjustment
$23,004.63
$ 5,902.52
$12,877.03
Respondent's Revised Net Worth Statement
1941
1942
1943
Total assets - at cost
$11,153.31
$11,246.00
$20,052.40
Total liabilities (including
depreciation reserves)
4,876.09
4,386.31
7,262.97
Net worth
$ 6,277.22
$ 6,859.69
$12,789.43
Annual Increase in Net
Worth
$ 89.02 *
$ 582.47
$ 5,929.74
Add: Living expenses (in-
cluding premiums)
2,550.55
2,687.17
6,090.72
Total Increase
$ 2,639.57
$ 3,269.64
$12,020.46
Less: Nonbusiness deduc-
tions as claimed in return
0.00
201.78
463.09
Net income before adjust-
ment
$ 2,639.57
$ 3,067.86
$11,557.37
Less: 50% of capital gain
upon liquidation of Broad-
way Drug, Inc. as of
12/31/46
0.00
0.00
0.00
Net Income as adjusted
$ 2,639.57
$ 3,067.86
$11,557.37
Net Income as reported
1,125.35
758.93
1,826.80
Amount of Adjustment
$ 1,514.22
$ 2,308.93
$ 9,730.57
*178 Respondent's Revised Net Worth Statement
1944
1945
1946
Total assets - at cost
$28,735.48
$30,977.16
$88,262.13
Total liabilities (including
depreciation reserves)
3,330.74
3,611.43
52,037.72
Net worth
$25,404.74
$27,365.73
$36,224.41
Annual Increase in Net
Worth
$12,615.31
$ 1,960.99
$ 8,858.68
Add: Living expenses (in-
cluding premiums)
6,670.86
6,664.19
4,650.95
Total Increase
$19,286.17
$ 8,625.18
$13,509.63
Less: Nonbusiness deduc-
tions as claimed in return
420.53
393.10
440.10
Net income before adjust-
ment
$18,865.64
$ 8,232.08
$13,069.53
Less: 50% of capital gain
upon liquidation of Broad-
way Drug, Inc. as of
12/31/46
0.00
0.00
$ 1,193.65
Net Income as adjusted
$18,865.64
$ 8,232.08
$11,875.88
Net Income as reported
(2,608.17)
1,560.58
2,701.67
Amount of Adjustment
$21,473.81
$ 6,671.50
$ 9,174.21
The revised net worth statement of the respondent results from incorporating therein adjustments for the amounts of insurance premiums paid, the amounts of checks outstanding at the end of certain *179 years, which affected the amounts of balances of some of petitioner's bank accounts, and for other adjustments referred to above. The amounts of the various adjustments, to which the parties are now agreed, are as follows, and have been taken into account in respondent's revised net worth statement: (1) Insurance premiums paid: Year
Amounts Paid
Adjustment
1941
$ 75.55
$ 42.10 (decrease)
1942
112.17
5.48 (decrease)
1943
3,048.72
1,797.75 (increase)
1944
3,228.86
430.97 (decrease)
1945
2,422.19
None
1946
436.71
.11 (decrease)
(2) Bank balances: Year
Bank
Correct Balance
Adjustment
1944
First National
$ 878.06
$ 568.26 (decrease)
1945
First National
4,989.21
8.04 (decrease)
1946
Fidelity National
77.69
209.79 (decrease)
1946
City National
(310.92)
1,855.90 (decrease)
(3) Accounts payable (trade): Year
Amount
Adjustment
1944
$ 531.59
(New in revised statement)
1945
394.85
(New in revised statement)
1946
17,301.67
$906.87 (decrease)
(4) Liability for accrued taxes: Year
Liability for Taxes
Adjustment
1946
$1,133.04
(New in revised statement)
Petitioner *180 purchased Broadway Drug from H. H. Kitchen under an agreement of sale dated February 25, 1938. The purchase price was $2,600. The purchase price was not apportioned in either the agreement of sale or in such records as were kept by petitioner between inventory and fixtures and equipment. Under the terms of the agreement of sale, petitioner made a cash down payment of $300; he assumed trade obligations of the vendor in the amount of $294.50; and he gave Kitchen a promissory note for the balance of $2,005.50. Petitioner's note was payable in monthly installments, plus interest, as follows: four installments of $50 each ( $200) commencing April 25, 1938; twenty-four installments of $75 each ($1,800) commencing August 25, 1938; and a final installment of $5.50 due on September 25, 1940. Kitchen deferred about five of the payments due on petitioner's note during 1938; the deferred payments totaled approximately $250. Petitioner made the final payments on the note in either 1942 or 1943. The amount of petitioner's indebtedness to Kitchen as of December 31, 1940, 1941, and 1942 is not disclosed by the record. As hereinabove set forth, the corporation, Broadway Drug, Inc., was availed *181 of by petitioner for the purpose of carrying on the retail drug business known as Broadway Drug from January 1, 1939 until April 9, 1941. From April 10, 1941 through December 31, 1946, petitioner operated Broadway Drug as a sole proprietor. The petitioner's investment in the business known as Broadway Drug was not less than $2,600 as of the end of each of the years 1941 to 1945, inclusive. Petitioner acquired Ralph's Drug in February 1939 at a bankrupt sale for $2,561.78. Petitioner borrowed the entire purchase price from Swift & Company for which he gave his promissory note secured by a chattel mortgage. Petitioner's note was executed on February 17, 1939, and was payable in 36 monthly installments of $71.15, each, plus interest commencing on March 1, 1939. Swift & Company operated an ice cream plant. Shortly after petitioner acquired Ralph's Drug, he entered into an agreement with Swift & Company whereby the latter was to charge 15 cents a gallon above the regular price for each gallon of ice cream it delivered to both Ralph's Drug and Broadway Drug. The surcharge of 15 cents a gallon was to be applied by Swift & Company to the balance due on petitioner's note. Petitioner's *182 note to Swift & Company was paid off pursuant to the above arrangement. The note was paid in full as of March 28, 1941. The record does not disclose the balance due on the note as of December 31, 1940. Petitioner acquired Elder Drug in 1946 for $25,000; he paid $21,000 in cash and assumed a trade obligation of the vendor to Alexander Drug Company in the amount of $4,000. In connection with the purchase of Elder Drug, petitioner borrowed $7,500 from the Flora Malone Estate, and $8,500 from the City National Bank, both of which obligations were outstanding at the end of 1946. Petitioner's obligation to Alexander Drug Company was reduced to $1,336 as of December 31, 1946. Petitioner expended $7,664 of his own funds in 1946 in connection with the purchase of Elder Drug which sum consists of the cash down payment of $5,000, and the reduction, in the amount of $2,664, in petitioner's assumed liability to Alexander Drug Company. Petitioner purchased additional store fixtures and equipment for Elder Drug during 1946. The depreciation schedule in petitioner's tax return for 1946 shows fixtures and equipment in use at Elder Drug with a cost basis to petitioner of $14,086.06 as follows: *183 Item
Date acquired
Cost
Furniture and fixtures
5/1/46
$ 8,935.06
Soda fountain
5/1/46
3,500.00
Air conditioner
5/1/46
700.00
Ice cream cabinets
5/1/46
951.00
Total
$14,086.06
In 1946 petitioner installed warehouse facilities in the basement of the property occupied by Broadway Drug. He bought boxes and cabinets for this purpose at a cost of $210, a walk-in refrigerator at a cost of $4,946, and a desk and chairs, typewriter, and billing machine at a cost of $345. The cost basis to petitioner as of December 31, 1946, of store fixtures and equipment in use at the petitioner's three stores and warehouse was not less than $21,315. The reserve for depreciation as of December 31, 1946, of store fixtures and equipment in use at the petitioner's three stores and warehouse was not more than $3,584. On July 1, 1946, the petitioner, as first party, and his brother Earl Wootan and C. W. Cartledge, as second parties, executed what purported to be a partnership agreement. Earl Wootan and Cartledge were, at the time, employees of petitioner. The agreement provided, in pertinent part, as follows: "WHEREAS, first party is now engaged in the retail drug *184 business in Oklahoma City, Oklahoma, and owns and operates (3) drug stores, one * * * known as Broadway Drug, one * * * known as Ralph's Drug, and one * * * which has heretofore been operated as Elder Drug * * * and first party is desirous of selling to each of second parties a three-twentieth (3/20th) or fifteen per cent interest in all of the assets of said drug stores, and second parties are each desirous of purchasing said interest. Now, therefore, it is stipulated and agreed that for the consideration hereinafter expressed first party has granted, bargained, sold and delivered to each of the second parties, an equal three-twentieths or fifteen per cent interest in all of the assets of said drug stores. "It is further stipulated and agreed: * * *
"III. "Upon the execution of this contract and in consideration of the transfer of the interest in the property hereinabove referred to, each of the parties of the second part agree to execute their promissory note payable to first party in a sum equal to fifteen per cent of the net value of the assets as shown by the list hereto attached and which said note shall be payable in four years from the date of this contract with *185 interest thereon at the rate of six per cent per annum from maturity. * * *
"V. "The parties hereto have and do by this agreement form a co-partnership and now agree to engage in business as a co-partnership for the purpose of operating the stores hereinabove referred to and such other stores, retail or wholesale, or businesses of any kind or character that the co-partnership shall hereafter acquire. * * *
"VII "In all of the partnership assets, until otherwise agreed, first party owns and shall own seventy per cent and second parties fifteen per cent each, and all net earnings of the said co-partnership shall be divided and shared on the same basis. * * *
"IX "All of the net earnings from said co-partnership of each of second parties, except as herein otherwise provided, shall be paid to first party and credited by him upon the obligations hereinabove referred to of each of second parties and upon their notes given for the purchase price of their interest in the said co-partnership assets. * * *" The firm name of the alleged partnership was Ralph's Drug Company. On July 1, 1946, and pursuant to the aforementioned agreement, Earl Wootan and Cartledge, *186 each, executed a promissory note payable to petitioner. Earl Wootan execute a note for approximately $8,955; Cartledge executed a note in the face amount of $9,725, which sum included a loan of $769 which petitioner made to Cartledge on the date the note was executed. The promissory notes which were executed by Earl Wootan and Cartledge were subsequently returned to them by petitioner. No interest or principal was ever paid on the notes, and no part of the earnings of petitioner's business was ever credited to the account of or paid over to either Earl Wootan or Cartledge. Earl Wootan and Cartledge did not acquire a 15 per cent interest, each, in either the assets or profits of petitioner's business as was provided in the agreement. At all times material hereto, the relationship of each to the petitioner's business was that of an employee. Each received the same salary from petitioner after the execution of the purported partnership agreement as he did immediately prior thereto. Earl Wootan acquired his own business early in 1947 at which time he terminated his employment with petitioner. No partnership return of income was filed in the name of Ralph's Drug Company for the period *187 July 1 through December 31, 1946. The provisions of the agreement of July 1, 1946, were never carried out by the parties. Petitioner, Earl Wootan and Cartledge did not, in good faith and acting with a business purpose, intend to join together as partners in the conduct of a retail drug business under the name of Ralph's Drug Company at any time during 1946. Petitioner was the sole proprietor of Ralph's Drug and Elder Drug from the dates of their acquisition through December 31, 1946. He was the sole proprietor of Broadway Drug from April 9, 1941 through December 31, 1946. The only accounting records which petitioner kept in connection with the operation of his drug store business were multi-columnar journals which, purportedly, reflected the daily receipts and disbursements of his drug stores. He did not maintain a general ledger or a cash book. He did not keep any records of annual inventories or depreciable assets. He did not maintain either a business or personal bank account prior to 1944. Also, petitioner did not keep any record of his rental income and expenses. Petitioner's accounting records were inaccurate and incomplete and did not reflect petitioner's true net income *188 for any of the years in question. The petitioner's tax returns for the years involved were prepared by H. W. Arnett, an employee of the Oklahoma State Tax Commission. Arnett prepared the returns from information furnished by petitioner usually on cards or slips of paper. The income of the Broadway Drug business for the years 1941-1946, inclusive, was, purportedly, reported in the corporation income tax return forms which were filed for Broadway Drug, Inc. The income of the business of Ralph's Drug and of Elder Drug was, purportedly, reported by petitioner in his returns. Petitioner reported gross receipts and net income (or loss) as proprietor of Ralph's Drug for the years 1941 through 1945, and of Ralph's Drug and Elder Drug for the year 1946, in the following amounts: Reported
Reported
income (or
gross business
loss) from
Year
receipts
business
1941
$ 29,808
$1,681
1942
33,997
960
1943
49,125
642
1944
52,779
(4,577)
1945
57,586
( 344)
1946
109,475
1,004
Totals
$332,770
( $634)
Sales were made at Ralph's Drug for cash and on credit. Cash sales, charge sales, and payments received on account of charge sales were, purportedly, *189 entered in separate columns in the store journal. The total amounts of charge sales, and the total amounts of payments received on account of charge sales in each of the years 1941 to 1946, inclusive, as shown by the journal for Ralph's Drug, were as follows: Payments
Year
Charge sales
received
1941
$ 1,735
$ 1,203
1942
2,356
1,723
1943
2,194
1,867
1944
2,970
1,714
1945
3,292
2,404
1946
3,578
3,813
Totals
$16,125
$12,724 Petitioner did not include in gross business receipts as reported in each of the years 1941-1946 either the total amount of charge sales or the total amount collected on account of charge sales. On May 1 and May 29, 1946, petitioner made cash withdrawals from Ralph's Drug of $53.53, and $49.38, respectively. The cash withdrawals were charged by petitioner to salary expense in the store journal. On November 10, 1947, petitioner filed a preliminary application with the Reconstruction Finance Corporation for a loan of $20,000 to be secured by a mortgage on store fixtures and equipment valued therein at $44,004. In the application, petitioner represented that his net profit from business for each of the years 1942-1946 was *190 as follows: Year
Net Profit
1942
$ 2,461
1943
3,847
1944
3,741
1945
4,643
1946
7,142
Total
$21,834
The following schedule summarizes the adjusted gross income from all sources, nonbusiness deductions, and net income as reported by petitioner in each of the years 1941-1946: 1941
1942
1943
Adjusted gross income: Net income from business
$1,681.44
$ 960.71
$ 642.89
Salary, Broadway Drug
1,350.00
Net rental income
297.00
Total adjusted gross income
$1,681.44
$ 960.71
$2,289.89
Nonbusiness deductions claimed in
556.09
201.78
463.09
return
Net income reported
$1,125.35
$ 758.93
$1,826.80
1944
1945
1946
Adjusted gross income: Net income from business
($4,557.14)
($ 334.12)
$1,004.57
Salary, Broadway Drug
1,350.00
1,350.00
1,350.00
Net rental income
1,039.50
937.80
787.20
Total adjusted gross income
($2,187.64)
$1,953.68
$3,141.77
Nonbusiness deductions claimed in
420.53
393.10
440.10
return
Net income reported
($2,608.17)
$1,560.58
$2,701.67
Petitioner purchased United States government savings bonds, Series E, in 1942 and 1943, at a cost of $75, and $1,050, respectively. *191 The bonds were not redeemed during the taxable years. In 1937 petitioner acquired the real property located at 13th and Kelham Streets for $4,650. The property consisted of a corner lot and two houses, one fronting on 13th Street, and one facing Kelham Street. Petitioner made a cash down payment of about $300 and secured a purchase money mortgage for the balance from Midland Federal Savings and Loan Association. The balance due on the mortgage as of December 31, 1940, was $3,490.37. In the years indicated, petitioner made the following payments on the mortgage: 1941, $287.14; 1942, $771.21; 1943, $1,490.77; and 1944, $941.25. Petitioner used the Kelham Street house as his residence. He converted the 13th Street house into two apartments. During the years 1941-1946, he rented each apartment for $17.50 or $25.00 a month. In 1943 petitioner acquired the two houses located at 1720 Northwest Thirty-fourth Street for $5,150. He made a down payment of about $250; the balance was secured by a purchase money mortgage. In 1943, petitioner made payments on the mortgage totaling $950. The balance due on the mortgage as of December 31, 1943, was $3,950, which amount petitioner paid in 1944. *192 Petitioner rented one of the houses on the Thirty-fourth Street property for $40 or $45 a month for a part of 1943, and during the years 1944-1946. Petitioner and his wife accumulated approximately $385 in coins between 1937 and 1941. Petitioner used the undeposited cash savings to purchase a used car in 1941. The cost of the used car was approximately $385. The used car was sold by petitioner in 1945 for about $900. The gain on the sale of the car was not reported in petitioner's 1945 tax return. Petitioner's living expenses for each of the taxable years were not less than the amounts set forth below. Petitioner also paid insurance premiums in the amounts set forth below: Cash spent
Cash
for Living
spent for
Cash
Year
Expenses
Premiums
Total
1941
$ 2,475.00
$ 75.55
$ 2,550.55
1942
2,575.00 *
112.17
2,687.17
1943
3,042.00
3,048.72
6,090.72
1944
3,442.00
3,228.86
6,670.86
1945
4,242.00
2,422.19
6,664.19
1946
4,214.24
436.71
4,650.95
$19,990.24
$9,324.20
$29,314.44
*193 During the period 1941-1946, the petitioner paid in cash $1,125 for Government bonds; $5,150 on the 34th Street property; $3,490.37 to Midland Savings & Loan; $2,664 on his note to Alexander Drug Co.; and $5,000 on the purchase of Elder Drug Store. These cash disbursements, plus cash payments for insurance premiums and living expenses, as set forth above, totalled $46,743.81. The following schedule shows petitioner's cash expenditures for the above described purposes in each of the taxable years, together with the net income (or loss) which he reported in his returns, and the excess of his non-deductible cash expenditures, exclusive of taxes paid, over and above his reported net income: Cash
1941
1942
1943
1944
1945
1946
Expenditures
Insurance
$ 75.55
$ 112.17
$3,048.72
$ 3,228.86
$2,422.19
$ 436.71
Living Expense
2,475.00
2,575.00
3,042.00
3,442.00
4,242.00
4,214.24
Bonds
75.00
1,050.00
Midland S. & L.
287.14
771.21
1,490.77
941.25
34TH Street
1,200.00
3,950.00
Alexander Drug
2,664.00
Elder Drug
5,000.00
Total
$2,837.69
$3,533.38
$9,831.49
$11,562.11
$6,664.19
$12,314.95
Net Income
1,125.35
758.93
1,826.80
(2,608.17)
1,560.58
2,701.67
Reported
Excess
$1,712.34
$2,774.45
$8,004.69
$14,170.28
$5,103.61
$ 9,413.28
*194 In his income tax returns for 1941, 1942, and 1944, petitioner reported that no tax was due. In his returns for 1943, 1945, and 1946, petitioner reported the tax due as $46.64, $31.82, and $38.32, respectively, a total of $110.28 of tax for three years, of which $96.64 was paid as of the end of 1946. The petitioner's net worth as of December 31 of each of the years 1942 to 1946, inclusive, was not less than the following amounts: Year
Net Worth
1942
$ 7,244.69
1943
13,174.43
1944
25,789.74
1945
27,365.73
1946
36,224.41
The petitioner's net income for each of the years 1943 to 1946, inclusive, was not less than the following amounts: Year
Net Income
1943
$11,557.37
1944
18,865.64
1945
7,847.08
1946
13,069.53
Petitioner's income tax returns for the years involved were timely filed, except for the 1942 return which was filed March 17, 1943. Consents were duly executed by the parties extending the period within which an assessment could be made for the years 1945 and 1946 until June 30, 1952. The notice of deficiency was mailed to petitioner on April 20, 1951. Petitioner's income tax returns for the years 1941 and 1942 were *195 not false or fraudulent, and the assessment of deficiencies for those years is barred by the statute of limitations. Petitioner filed false or fraudulent income tax returns for each of the years 1943 to 1946, inclusive. Part of the deficiency in petitioner's income tax for each of the years 1943 to 1946, inclusive, is due to fraud with intent to evade tax. Opinion The respondent determined deficiencies and penalties against an alleged corporation, Broadway Drug, Inc, Dissolved, for the years 1939 to 1946, inclusive (Docket No. 35606), and he determined that petitioner, Ralph Wootan, is liable as a transferee to the extent of $4,987.31 for the deficiencies and penalties determined against the alleged corporation. The principal issue, in the case of Broadway Drug, Inc., is whether the alleged corporation is taxable as a separate entity for each of the years 1939 through 1946. Other issues presented are whether its income was understated in any of the years 1939 to 1946, inclusive; whether part of any deficiency is due to fraud with intent to evade tax under section 293(b) of the 1939 Code; whether Broadway Drug, Inc. failed to file the returns required by law so as to be liable *196 for the additions to tax under section 291(a) of the 1939 Code; and whether the assessment of deficiencies against Broadway Drug, Inc. for any of the years involved is barred by the statute of limitations. The respondent also determined deficiencies and additions thereto for fraud in the income tax of Ralph Wootan for 1941 (Docket No. 35605) and Ralph and Corrine Wootan for the years 1942 through 1946 (Docket No. 35607). In the Wootan cases, respondent reconstructed the petitioners' taxable net income by use of the annual increase in net worth and expenditures method. The issues, in general, are whether the respondent's resort to the net worth method was justified; whether the respondent correctly determined the amounts of the petitioners' taxable net income for each of the years 1941 to 1946, inclusive; whether part of any deficiency is due to fraud with intent to evade tax; and whether the assessment of deficiencies for any of the years involved is barred by the statute of limitations. We shall consider first the questions which relate to the alleged corporation, Broadway Drug, Inc.
Docket No. 35606-Broadway Drug, Inc., Dissolved The respondent determined deficiencies in *197 income tax and declared value excess profits tax against Broadway Drug, Inc., Dissolved, for the years 1939 through 1945, and a deficiency in income tax for 1946. He also determined that part of each deficiency is due to fraud with intent to evade tax; and that Broadway Drug, Inc., Dissolved, is liable for the addition to tax provided by section 291(a) of the Internal Revenue Code of 1939 for failure to file proper returns as required by law for each of the years 1939 through 1943, and for the years 1945 and 1946. The additions to tax under section 291(a) were asserted by amended answer. Respondent concedes that the assessment of deficiencies, if any, for the years 1939 to 1944, inclusive, is barred by the statute of limitations unless it is established that fraudulent returns were filed, or that the returns filed were not the returns required by law. The first question to be decided is whether Broadway Drug, Inc., is taxable as a separate entity for each of the years 1939 through 1946. Respondent contends that it was a de jure or de facto corporation until April 9, 1941, on which date its charter was revoked by the state of incorporation, and that thereafter it was an association *198 taxable as a corporation under Regulations 111, section 29.3797-2. Petitioner argues that Broadway Drug, Inc., ceased to exist as a legal corporate entity after its charter was revoked, and that, although the business was thereafter continued, the essential elements of an association were lacking since the business was owned and operated solely by petitioner. Petitioner also argues that the corporation did not engage in any business activity prior to July 29, 1939, the date on which it qualified as a foreign corporation to do business within the State of Oklahoma. Broadway Drug, Inc., was incorporated in Arkansas in 1937. The fact that its corporate organization was not perfected, and that it did not comply with all the requirements of state law, is not vital to its corporate existence. The evidence establishes and we have found as a fact that Broadway Drug, Inc., took over the operation of the Broadway Drug store as of January 1, 1939. From that date until April 9, 1941, it engaged in business under a valid corporate charter. On April 9, 1941, its charter was revoked by the State of Arkansas for nonpayment of franchise taxes. Broadway Drug, Inc., thereafter ceased to exist as *199 a legal corporate entity. See Knoxville Truck Sales & Service, Inc., 10 T.C. 616. There remains for consideration the question whether Broadway Drug, Inc., was an association taxable as a corporation after the termination of its corporate existence. We think not. We agree with petitioner that an essential element of an "association" as defined by the Supreme Court in Morrissey v. Commissioner, 296 U.S. 344, is lacking here, that is, the entering into a joint enterprise for the transaction of business. It is true, as respondent contends, that the business of the corporation was continued after the corporation ceased to exist in the same manner as before, and that actually petitioner did not learn of the revocation of the corporate charter until subsequent to the period in question. The fact of the matter is, however, that the corporation was wholly-owned and controlled by petitioner, and, upon its termination, the business was continued under the sole ownership, management and control of petitioner. Under these circumstances, the continuation of the business did not give rise to an association taxable as a corporation. Obviously, there was no joint enterprise *200 involved in the conduct of the business. The business became a sole proprietorship, the income from which is, properly, taxable to petitioner. We so held upon similar facts in Knoxville Truck Sales & Service, Inc., supra, and we regard that decision as controlling here. We conclude that Broadway Drug, Inc., was a separate taxable entity only for the period January 1, 1939 until April 9, 1941. The respondent's determination of deficiencies and penalties against Broadway Drug, Inc., Dissolved, for taxable periods subsequent to April 9, 1941 is reversed. The remaining issues are pertinent only insofar as they relate to the period during which the corporation was in existence, that is, from January 1, 1939 through April 9, 1941. Absent fraud or a failure to file returns required by law, the assessment of deficiencies against Broadway Drug, Inc., Dissolved, for the years 1939, 1940 and 1941 is barred by the statute of limitations. Respondent has the burden of proving fraud by clear and convincing evidence. He has not met that burden. We have carefully reviewed the entire record as it relates to Broadway Drug, Inc. The evidence fails to establish in a convincing manner *201 that the returns filed by Broadway Drug, Inc. for the years 1939, 1940 and 1941 were false or fraudulent. Respondent determined that the corporation is liable for the addition to tax provided by section 291(a) of the Internal Revenue Code of 1939, for each of the years 1939, 1940 and 1941 on the grounds that the returns as filed by the corporation did not meet all of the requirements of section 52(a). Respondent points to the fact that the returns were not signed and sworn to "by the treasurer, assistant treasurer, or chief accounting officer" of the corporation as required by the statute. There is no merit to the respondent's position. The returns for 1939, 1940, and 1941 were timely filed. Each of the returns was signed and sworn to by the petitioner as president. The corporation had no treasurer or chief accounting officer. Petitioner was in fact the only officer. Under these circumstances, we conclude that the returns for the years 1939, 1940 and 1941 complied with the requirements of the statute. See Consolidated Apparel Co., 17 T.C. 1570, 1583, affd. in part and reversed in part, 207 Fed. (2d) 580. Consequently, the assessment of deficiencies against *202 Broadway Drug, Inc., Dissolved, for the years 1939, 1940 and 1941 is barred by the statute of limitations. It is so held. It follows that the assessment of any deficiency against the petitioner as a transferee of Broadway Drug, Inc., is likewise barred by the statute of limitations. Docket Nos. 35605 and 35607-Ralph and Corrine Wootan The respondent determined deficiencies for the years 1941 to 1946, inclusive, by use of the annual increase in net worth and expenditures method. He also determined that part of the deficiency for each year is due to fraud with intent to evade tax. The assessment of deficiencies for the years 1941 to 1944, inclusive, is barred by the statute of limitations unless it is established that the petitioner filed false or fraudulent returns. The burden of proof as to the deficiencies is upon the petitioner. The respondent has the burden of proving fraud. If the respondent establishes fraud, the bar of the statute of limitations is removed and the prima facie correctness which attaches to his determinations is revived. Leonard B. Willits, 36 B.T.A. 294, 300; Harris v. Commissioner, 174 Fed. (2d) 70, 72. As hereinafter discussed, *203 respondent has met his burden of proving fraud with respect to the years 1943 to 1946, inclusive. Respondent has not established by clear and convincing evidence that petitioner filed false or fraudulent returns for the years 1941 and 1942. Accordingly, the assessment of deficiencies for these years is barred by the statute of limitations. Petitioner does not contest the respondent's use of the net worth method. He admits that his records and his tax returns failed to reflect his net income for the period in question, and that the respondent was justified in reconstructing his income by use of an acceptable method. Petitioner agreed at the trial that all but a few of the items included in the net worth statement were correct. Also, at the trial, the parties entered into stipulations with respect to certain items included in or omitted from the respondent's original net worth statement. The stipulations of the parties are set forth in the Findings of Fact. The respondent on brief submitted what is referred to herein as his revised net worth statement which gives effect to the stipulations of the parties entered into at the trial. The respondent now claims deficiencies and additions *204 thereto for fraud based upon the amounts of net income shown in the revised net worth statement. Petitioner's agreement to accept as correct certain items of business assets and liabilities which are included in his net worth for 1946 is dependent upon the Court's determination of the question whether petitioner's drug store business was conducted as a partnership from July 1 through December 31, 1946. Petitioner takes the position that there are substantial errors in the respondent's net worth statement, and that the amounts of net income based thereon are unwarranted by the facts and are arbitrary and excessive. Petitioner contends that the respondent erred (1) in refusing to recognize the alleged partnership and in including in petitioner's net worth for 1946, the assets and liabilities of the alleged partnership; (2) in including in petitioner's net worth for the years 1941-1945 any amounts as the cost of his investment in Broadway Drug, Inc.; (3) in determining the cost basis to petitioner of store fixtures and equipment as of the end of 1946; (4) in failing to include in liabilities the amounts owned [lwed] by petitioner at the end of the years 1940-1943 in connection with *205 the purchase of drug stores; and (5) in failing to include in assets petitioner's cash savings at the end of the years 1940-1943. (1) Alleged partnership. Petitioner contends that on July 1, 1946, the 3 stores and warehouse involved herein were acquired by a partnership in which he had only a 70 per cent interest, and that respondent erred in including in his net worth for 1946, the assets and liabilities of the alleged partnership. Petitioner's contention is without merit. Respondent did not err in refusing to recognize the alleged partnership. It is evident from the record that petitioner did not intend to form a bona fide partnership with his brother and Cartledge as was provided in the agreement which they each executed on July 1, 1946. The pertinent provisions of the agreement are set forth in the Findings of Fact. We regard as persuasive the fact that the provisions of the agreement actually were never carried out by the parties. Earl Wootan and Cartledge never acquired a 15 per cent interest, each, in the assets or profits of petitioner's business. No interest or principal was ever paid on the notes which they gave to petitioner in accordance with the agreement; the notes *206 were subsequently returned to them by petitioner. No part of the earnings of petitioner's business was ever paid over to or credited to the account of either Earl Wootan or Cartledge. No partnership return of income was filed for the period July 1 through December 31, 1946. The petitioner's 1946 return, purportedly, reflects his net income from business as a sole proprietor. These facts clearly refute the petitioner's contention that during the period July 1 through December 31, 1946, he conducted his retail drug business in partnership with his brother and Cartledge, and that he had only a 70 per cent interest in the assets of the alleged partnership. We conclude that petitioner carried on his retail drug business throughout 1946 as a sole proprietor. Accordingly, the assets and liabilities of petitioner's drug stores are, properly, includible in his net worth for 1946. (2) Cost of investment - Broadway Drug, Inc. The net worth statement shows petitioner's capital investment in Broadway Drug, Inc., as of the end of each of the years 1940 through 1945 at $2,600; for the year 1946, the assets and liabilities of Broadway Drug, Inc., Dissolved, are included as assets and liabilities *207 of the petitioner as a result of respondent's determination that the corporation was liquidated on December 31, 1946, and that its assets were acquired by petitioner on that date. The figure of $2,600 used by respondent represents the original cost to petitioner of Broadway Drug in 1938. At the time respondent mailed the notices of deficiencies involved in these proceedings, he was not aware of the fact that the charter of Broadway Drug, Inc., had been revoked in 1941. Actually petitioner did not learn of this action until several weeks prior to the trial. The fact that the corporate charter was revoked was apparently not brought to respondent's attention until the trial. In preparing the notices of deficiencies, respondent relied upon the fact that corporation income tax return forms were filed in the name of Broadway Drug, Inc., for each of the years 1939 to 1946, inclusive, and that the return form for 1946 was marked "final return." Respondent did not move at the trial for an increase in the deficiencies in the event the Court reversed his determinations regarding Broadway Drug, Inc.
Our conclusion, supra, that petitioner became the sole proprietor of Broadway Drug upon the *208 dissolution of the corporation raises the question what assets and liabilities are to be included in petitioner's net worth for the years 1941 to 1945, inclusive, to reflect his operation of Broadway Drug as a sole proprietor. As aforementioned, respondent has included in petitioner's net worth for 1946, the assets and liabilities relating to Broadway Drug in accordance with his determination that the corporation was liquidated on December 31, 1946. The Broadway Drug items for 1946 are accepted as correct by petitioner with the exception of store fixtures. Although petitioner argues that, in lieu of his investment in the dissolved corporation, there should be included in his net worth for 1941 and subsequent years, the assets and liabilities of Broadway Drug as adjusted for increases and decreases, he has made no effort to establish what these amounts were. As a matter of fact, it is evident that in all likelihood the items could not be reconstructed with reasonable accuracy. The two principal asset items involved are inventories and fixtures, and petitioner has admitted that he did not keep any record of annual inventories or depreciable assets. With respect to liabilities, the *209 evidence shows that it is impossible to determine from petitioner's records the extent of outstanding trade obligations, if any, at the end of the years prior to 1946. The failures and omissions are the petitioner's. Petitioner had the burden of establishing the cost basis of the assets of Broadway Drug, and the amount of liabilities with respect to the operation of Broadway Drug as of the end of the years involved. He has failed in his burden of proof. Under the circumstances, we have found as a fact and conclude that petitioner's investment in the Broadway Drug store as of the end of each of the years 1941 to 1945, inclusive, was not less than $2,600. (3) Store fixtures and equipment as of December 31, 1946. The respondent determined that as of December 31, 1946, the cost basis of all of petitioner's store fixtures and equipment was $21,315, which amount he has included in petitioner's net worth for 1946. Respondent also determined that the reserve for depreciation of the store fixtures and equipment amounted to $3,584, which sum appears in the net worth statement under liabilities for 1946. Petitioner contends that the cost of fixtures and equipment at the end of 1946 as *210 determined by respondent is excessive. The petitioner's burden of proof includes the burden of proving error in the respondent's determination of the cost basis of the fixtures and equipment in his stores. This he has failed to do. Petitioner has not offered any evidence to rebut respondent's determination. He did not offer in evidence any itemization of his store fixtures and equipment, and none is contained in his tax returns for the years before us. Furthermore, petitioner agrees that the cost of store fixtures and equipment in use at Ralph's Drug at the end of 1946 was $1,710 as reported in his 1946 return. The cost of the Elder Drug fixtures and equipment as reported in petitioner's 1946 return was $14,086. Petitioner admits that he installed warehouse facilities in the basement of Broadway Drug during 1946. His own testimony establishes that he bought cabinets, office equipment, and a walk-in refrigerator for the warehouse. With respect to the walk-in refrigerator, petitioner testified that it was purchased in either 1946 or 1947. However, the partnership return of income which petitioner filed for 1947 lists the walk-in refrigerator among the store fixtures and equipment acquired *211 by the alleged partnership on January 1, 1947. This fact, coupled with petitioner's tendency to misrepresent the truth as hereinafter discussed, satisfies us that he purchased the refrigerator in 1946 and not in 1947. The total cost of the equipment purchased by petitioner in 1946 for the warehouse was $5,501. Without taking into account Broadway Drug fixtures, the evidence thus shows that the total cost of the fixtures and equipment in use at Ralph's Drug, Elder Drug, and the warehouse at the end of 1946 was $21,297, or only $18 less than the amount determined by respondent for the 3 stores and the warehouse. Petitioner has not offered any evidence whatever to establish the fair market value in 1941 of the fixtures and equipment which he acquired from the corporation upon its dissolution, adjusted for any increases or decreases occurring in the subsequent years. It is apparent from the record however that the cost of the Broadway Drug fixtures at the end of 1946 was in excess of $18. We conclude that petitioner has failed to show that respondent's determination of the cost of store fixtures and equipment as of December 31, 1946, was arbitrary or excessive. If anything, the record *212 indicates that the cost of petitioner's store fixtures and equipment was greater than the amount determined by respondent. (4) Petitioner's liabilities in connection with his acquisition of drug stores. Petitioner, also, attacks the validity of respondent's net worth statement in that it fails to reflect his liabilities to Kitchen and to Swift & Company in connection with his purchase of Broadway Drug and Ralph's Drug, respectively. Kitchen was called as a witness by petitioner. He testified that during 1939 he allowed petitioner to defer about 5 payments on his note, the deferred payments amounting to about $250. Kitchen did not state when petitioner made the final payment on the note. Petitioner claims it was 1942 or 1943. However, petitioner did not offer any evidence as to the amount, if any, of his indebtedness to Kitchen at the end of 1941 or 1942. Here, also, he has failed in his burden of proof. Furthermore, any amount which petitioner may have owed Kitchen at the end of 1941 or 1942 would not materially affect his net income as determined under the net worth method. At best, it would shift income from 1942 to 1943. The record does not indicate what amount, if any, petitioner *213 owed Swift & Company as of the end of 1940. The evidence establishes that his indebtedness to Swift & Company was satisfied in 1941. Therefore, the only year in which the item could affect the determination of petitioner's net income is 1941, and the year 1941 is barred by limitations. (5) Cash savings - automobile. Respondent did not include any cash savings of petitioner in the net worth statement, and he did not include therein a used car purchased by petitioner in 1941. We have accepted petitioner's testimony that between 1937 and 1941 he and his wife accumulated approximately $385 in coins, and that the cash savings accumulated in this manner were used by him to purchase a second hand car in 1941. The cost of the car was approximately $385. Petitioner sold the car in 1945. Petitioner does not claim to have had any other cash savings on hand or in banks as of the end of 1940 or 1941. We have included the used car in the petitioner's net worth for the years 1941, 1942, 1943, and 1944. We do not know why respondent failed to include the used car in petitioner's net worth. The item may not have been disclosed to respondent's agents during the investigation. Whatever the reason, *214 the item is a minor one, and it does not materially affect either the validity of respondent's net worth statement or the amount of net income thus determined for any year. We conclude that petitioner has failed to establish any substantial error in the respondent's determination of net income under the net worth method. It is held that the petitioner's correct taxable net income for each of the years 1943 to 1946, inclusive, was not less than the amounts set forth in the Findings of Fact. Petitioner's net income for the years 1943 and 1945, as found by the Court, is greater than the amounts of net income for those years as determined by respondent in the notice of deficiency. For the year 1943, this is due, principally, to the fact that the correct amount of insurance premiums was not included by respondent in petitioner's estimated living expenses for 1943 as determined in the deficiency notice. Respondent has moved for an increase in the deficiency for 1943. For the year 1945, the difference is the result, chiefly, of the stipulation of the parties as to the amount of accounts payable to be included in the net worth statement as liabilities of petitioner for 1944 and 1945, *215 and to the adjustment, conceded as proper by respondent, to bank balances as shown in the net worth statement for 1944 and 1945. Respondent has not moved for an increase in the deficiency for 1945. The deficiency for 1945 is therefore limited to the amount determined in the notice of deficiency. Fraud. Respondent has the burden of proving fraud by clear and convincing evidence. Whether respondent has met that burden is to be determined from a consideration of the entire record and not merely from the affirmative evidence presented by him. L. Schepp Co., 25 B.T.A. William W. Kellett, 5 T.C. 608, 616; Wallace H. Petit, 10 T.C. 1253, 1257. We have reviewed the lengthy record with care. We find the evidence persuasive that petitioner filed fraudulent returns with intent to evade tax for each of the years 1943 to 1946, inclusive, and that part of the deficiency for each year is due to fraud. The evidence falls short of establishing fraud with respect to the years 1941 and 1942. Petitioner's net income as reported for the 4 year period from 1943 through 1946 was understated by more than $48,000. The discrepancy between his reported and his true net income for *216 each of the years was considerably in excess of 100 per cent. Petitioner claims that the discrepancies were due to his ignorance of proper accounting practices and of the requirements of the revenue laws. On brief petitioner characterizes his conduct in dealing with the government as "a comedy of ignorance." We are not impressed with petitioner's protestations of ignorance and innocent error. Petitioner is a high school graduate. He has been a registered pharmacist in Oklahoma since 1935. He had considerable experience in the retail drug business, including managerial experience, before he acquired his first store in 1938. He had every reason to be aware of the necessity for keeping reasonably accurate and complete business records. His admitted failure to do so cannot under the facts in this record be attributed to any real lack of understanding on his part as to what the law required of him. Moreover, the evidence is clear and convincing that the discrepancies between petitioner's reported and his true net income could not have occurred without guilty knowledge and fraudulent intent on his part. Petitioner's own testimony establishes that as of the end of 1942 he had little or *217 no cash savings. He admits that during the period in question he did not acquire any property by gift or inheritance. Petitioner's drug stores and his rental properties were his only sources of income. His reported net income for the 4 year period 1943-1946 totaled $3,480 after deducting the reported loss for 1944. The record shows conclusively that during the same period petitioner's known cash expenditures were at least $40,372 or approximately ten times his reported net income. To cite but one example; petitioner's premium payments on policies of life insurance totaled $9,136 or more than twice his reported net income. His cash expenditures during this period are set forth in the Findings of Fact. There is no doubt that the sums expended were taxable income. It is inconceivable that this income which was unquestionably received by petitioner failed to show up in his tax returns through innocent error or oversight. Further evidence of guilty knowledge and fraudulent intent on the part of petitioner is found in the application for a loan which he filed with the Reconstruction Finance Corporation on November 10, 1947. The application was filed prior to the time the investigation *218 of petitioner's tax liability was commenced, and before petitioner employed any accountants to go over his records and reconstruct his income. In the application, petitioner represented that he realized a net profit from business for each of the years 1943 to 1946, inclusive, and that his total tax profit for the 4 year period was $19,373. According to petitioner's tax returns, he sustained a net loss from business for the same period of $3,275. Petitioner does not explain how he determined in 1947 that his business net income for the preceding 4 years amounted to over $19,000 while his tax returns disclosed a net loss of over $3,000. Furthermore, it is unlikely that any explanation offered by petitioner would have added anything to the record. We have not been impressed with much of the petitioner's testimony, and we find it necessary to comment on his credibility as a witness. Respondent has presented evidence which demonstrates petitioner's willingness to misrepresent the facts and to play fast with the truth. Petitioner's false testimony on the relatively unimportant matter of his educational background is apparently indicative of his attitude toward the sancity of an oath. He *219 repeatdly testified that he attended universities for a period of 4 years. When the respondent produced evidence of the untruth of his statements, petitioner finally conceded that in fact he had attended a university for only one semester. We note, also, that while petitioner played up his educational background at the trial, he pleads ignorance on brief. Petitioner's untruthful statements also extended to matters of more importance. He testified that in 1945 he entered into an oral agreement with the owners of the property occupied by Broadway Drug under which he received $50 a month for collecting the rents from other tenants and for managing the building. His testimony on this point was flatly contradicted by the testimony of Mary Haley, one of the co-owners of the property. He also testified that, in entering footings in the Broadway Drug journal, he purposely understated the monthly totals of the cash sales columns by approximately $200 each. This practice was followed for a period of 6 years, according to petitioner's testimony, in order to facilitate the preparation of monthly sales tax reports required the state of Oklahoma. He explains that the $200 monthly understatement *220 of sales in the journal was his estimate of sales made to other druggists which were not taxable by the state, and that through oversight he failed to add back the monthly understatements in preparing his federal tax returns. Respondent offered in evidence Oklahoma sales tax returns which rebut petitioner's testimony. Moreover, petitioner, when interviewed under oath by the examining agents, stated that he could not explain why the footings in the cash sales column of the Broadway Drug journal were erroneous. The only reasonable inference to be drawn from the facts in this record is that petitioner knowingly understated his net income and deliberately filed fraudulent returns with intent to evade tax for the years 1943 through 1946. See Louis Halle, 7 T.C. 245, affd. 175 Fed. (2d) 500, certiorari denied, 338 U.S. 949; Arlette Coat Co., 14 T.C. 751; Charles A. Rogers, 38 B.T.A. 16, affd. 111 Fed. (2d) 987. It is held that petitioner filed false or fraudulent returns for each of the years 1943 to 1946, inclusive, and that part of the deficiency for each year is due to fraud with intent to evade tax. Accordingly, *221 the assessment of deficiencies for 1943 and 1944 is not barred by the statute of limitations. It is held further that petitioner did not file false or fraudulent returns for 1941 and 1942, and that the assessment of deficiencies for 1941 and 1942 is barred by the statute of limitations. Decisions will be entered for the petitioners in Docket Nos. Docket No. 35607. Footnotes
1. The following proceedings were consolidated: Docket No. 35607, Ralph G. Wootan and Corrinne Wootan; Docket No. 35606, Broadway Drug, Inc., Dissolved; and Docket No. 35608, Ralph G. Wootan, Transferee of Broadway Drug, Inc., Dissolved.↩
**. Errors in addition in respondent's original net worth statement, Exhibit C, have been corrected.↩
*. ↩
1940
Assets
$11,070.00
Liabilities
4,881.80
Net Worth
$ 6,188.20
*. ↩
1940
Assets
$11,070.00
Liabilities
4,881.80
Net Worth
$ 6,188.20
*. In a schedule in respondent's brief, the amount for 1942 living expenses is stated to be $2,625. In that figure there is an error of $50; the correct figure is $2,575.↩