GARRISS INVESTMENT CORPORATION, Petitioner v COMMISSIONER OF INTERNAL REVENUE, Respondent; LOIS R. GARRISS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garriss Inv. Corp. v. Commissioner
Docket Nos. 4364-80, 4365-80.
United States Tax Court
T.C. Memo 1982-38; 1982 Tax Ct. Memo LEXIS 705; 43 T.C.M. (CCH) 396; T.C.M. (RIA) 82038; January 29, 1982. *705 GIC's corporate charter was cancelled by North Carolina in 1967. Thereafter, the corporation continued to hold nominal legal title to real estate, but the property was developed and sold by H as a sole proprietor. In 1976 the corporation applied for reinstatement of its charter and commenced some business activity. In the same year, H married P and transferred all of the stock in GIC to P. Held, GIC was neither a corporation nor an association taxable as a corporation, for tax purposes, from 1969 to February 9, 1976 and therefore is not taxable on the gains realized from the sales of property from 1969 until the date of reincorporation in 1976. Held further, GIC is taxable on gains arising after February 9, 1976. See sec. 301.7701-2, Proced. & Admin. Regs. GIC was neither a passive dummy nor a valid corporate agent for its shareholders. Held further, respondent's determination of GIC's taxable income for 1976 and 1977 is correct, except that sales occurring prior to February 9, 1976 should not be attributed to GIC. Held further, GIC is liable for additions to tax for 1976 and 1977 under sec. 6651(a)(1), I.R.C. 1954, for failure to file timely returns, under sec. 6653(a) for *706 negligence or intentional disregard of the rules and regulations, and under sec. 6655 for failure by a corporation to make estimated tax payments. Held further, P received dividend income in 1976 and 1977 from GIC in the form of distributions of cash upon receipt by GIC of payments on various notes and a distribution of property without consideration. Held further, P is taxable in 1977 on interest credited to accounts held jointly in her name and her children's names. Held further, P is liable for the addition to tax under sec. 6651(a)(1) for failure to file a timely tax return for 1977. F. Timothy Nicholls, and Nicholas J. Dombalis, II, for the petitioners. Mathew E. Bates, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By statutory notices of deficiency dated December 28, 1979 respondent determined deficiencies and additions to tax in petitioners' income taxes as follows: Docket
No.
Petitioner
Year
Deficiency
4364-80
Garriss Investment
1969
$ 2,868.73
Corp.
1970
1,548.27
1971
1,430.62
1972
1,701.02
1973
41,845.58
1974
6,820.49
1975
3,414.33
1976
7,468.41
1977
451.45
4365-80
Lois R. Garriss
1976
4,080.00
1977
3,308.83
Docket
Addition to tax under
No.
sec. 6651 (a)(1)
sec. 6653 (a)
sec. 6655
4364-80
$ 717.18
$ 143.44
387.07
77.41
357.66
71.53
425.26
85.05
10,461.39
2,092.27
$ 1,086.00
1,705.12
341.02
103.00
853.58
170.71
83.00
1,867.10
373.42
200.00
112.86
22.57
16.00
4365-80
138.93
The *707 issues for our consideration are (1) whether Garriss Investment Corporation is taxable as a corporation for Federal income tax purposes for the taxable years 1969 through 1977; (2) if so, whether respondent's determination of Garriss Investment Corporation's taxable income for the years 1969 through 1977 is correct; (3) whether Garriss Investment Corporation is liable for the additions to tax under section 6651(a)(1) for failure to file timely returns for the taxable years 1969 through 1977, under section 6653(a) for negligence or intentional disregard of the rules and regulations for the taxable years 1969 through 1977, and under section 6655 for failure by a corporation to pay estimated income tax for the taxable years 1973 through 1977; (4) whether Lois R. Garriss received money and property from Garriss Investment Corporation during 1976 and 1977 that properly was reportable as dividend income; (5) whether Lois R. Garriss received $ 139 of unreported interest income during 1977; and (6) whether Lois R. Garriss is liable for the addition to tax under section 6651(a)(1) for failure to file a timely income tax return in 1977. FINDINGS OF FACT Some of the facts have been stipulated *708 and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Garriss Investment Corporation (GIC) was a corporation with its principal place of business in Roanoke Rapids, North Carolina. No Federal income tax returns ever were filed by GIC. Petitioner Lois R. Garriss (Mrs. Garriss) resided in Roanoke Rapids, North Carolina at the time she filed her petition herein. She filed her Federal income tax return, Form 1040, for the taxable year 1976 on October 17, 1977 with the Internal Revenue Service Center at Memphis, Tennessee. On July 24, 1978 Mrs. Garriss filed an amended income tax return, Form 1040X, for 1976. With respect to her Federal income tax return for 1977, Mrs. Garriss received an extension of time for filing until June 15, 1978. Her accountant filed an Application for Extension of Time to File, Form 2688, requesting a further extension until August 15, 1978 to file her 1977 return. The application was dated June 14, 1978 but was not received by the Internal Revenue Service until June 19, 1978. The stated reason for her request for an extention was that "taxpayer has been unable to assemble necessary *709 information to file a true and correct return by June 15, 1978." Such application was denied by the Internal Revenue Service on June 27, 1978 because the request was found to have been made "for no important reason, only to gain time." On July 7, 1978, Mrs. Garriss filed her 1977 return, Form 1040, with the Internal Revenue Service Center at Memphis, Tennessee. On May 25, 1961 Articles of Incorporation for GIC were filed with the Secretary of State of North Carolina, who thereafter issued a corporate charter to GIC. GIC was incorporated by Dr. Marcus A. Garriss, Sr. (Dr. Garriss), a dentist, Lottie Garriss, his wife at the time, and Ike F. Rochelle, the same three individuals who comprised the initial board of directors. The purposes for which the new corporation was organized included the acquisition, subdivision and sale of real estate. Following incorporation, on October 23, 1961, Dr. Marcus A. Garriss received almost all of the common stock of GIC. GIC issued 718.5 shares of its common stock to Dr. Garriss and 1 share each to Mrs. Lottie C. Garriss [1] *710 and Ike F. Rochelle. The following chart shows the ownership of the common stock of GIC from 1961 to the present time: Certificate
Date
No. of
Date
No.
Owner
Issued
Shares
Cancelled
1
Dr. Marcus A. Garriss
10/23/61
1
5/5/76
2
Lottie C. Garriss
10/23/61
1
5/5/76
3
I. F. Rochelle
10/23/61
1
5/5/76
4
Dr. Marcus A. Garriss
10/23/61
397
5/5/76
5
Dr. Marcus A. Garriss
10/23/61
320-1/2
5/5/76
6
M. A. Garriss, Jr.
5/5/76
1
7
Mrs. M. A. Garriss, Sr.
5/5/76
358
8
Dr. M. A. Garriss
5/5/76
361-1/2
[2] 6/15/77
9
Lois R. Garriss
6/15/77
361-1/2
On May 29, 1961 GIC acquired approximately 190 acres of land by two deeds from two different grantors. Both deeds named GIC as grantee. The land, which had already been subdivided into lots, was known as the Lakeview Park Subdivision. In connection with the purchase of the Lakeview Park Subdivision, two deeds of trust were executed by Dr. Garriss in his capacity as president of GIC. One deed was executed on May 29, 1961 in favor of one of the grantors from which GIC took title to a portion of the property. This deed of trust was intended to secure an indebtedness *711 of $ 17,500 on the Lakeview Park property. A second deed was executed on December 18, 1961 in favor of the First Citizen's Bank and Trust Company, Roanoke Rapids, North Carolina. Such deed of trust was to secure an indebtedness of $ 40,000 which GIC used as part of the payment for the property. The available corporate minutes indicate that an organizational meeting was held by the incorporators of GIC on May 26, 1961. The minutes indicate that additional meetings of the board of directors were held on June 16, 1961, October 23, 1961, November 20, 1961, March 1, 1967, April 28, 1977, and August 10, 1977. The minutes for the March 1, 1967 meeting indicate that the only item of business was the election of a director and secretary of the corporation to succeed Mrs. Lottie C. Garriss, deceased. Marcus A. Garriss, Jr. was elected to fill those positions. Following its incorporation, GIC failed to file certain North Carolina state corporate income and franchise tax returns, as required by law, and to pay such taxes. Therefore, its corporate charter was suspended on December 14, 1962, pursuant to N.C. Gen. Stat. Sec. 105-230. At the time the corporate charter was suspended, GIC had *712 not sold any of the real property in the Lakeview Park Subdivision or earned any income. During the period between 1962 and 1967, while the corporate charter was suspended, GIC sold lots in the subdivision to third parties. As GIC did not maintain any checking, savings or other bank account, all payments made to GIC on the sale of property were received by Dr. Garriss and were deposited into his personal account and comingled with his personal funds. All expenses incurred in connection with the development of the subdivision were paid by Dr. Garriss out of his personal account, including, but not limited to, legal fees, surveys, paving, waterlines, property taxes and other development costs. On December 14, 1967, following the 5-year period of operating under a suspended charter, during which reinstatement is permitted pursuant to N.C. Gen. Stat. sec. 105-232, GIC's charter was cancelled. After 1967 Dr. Garriss continued the development and sale of lots in the subdivision. Until the early 1970's, all sales in the subdivision were of undeveloped lots. Beginning in the early 1970's, houses were constructed on some of the lots and were sold along with the undeveloped lots. During *713 the years 1969 through 1977, GIC deeded the following number of parcels of land pursuant to sales to third parties and transfers without consideration by Dr. Garriss to members of his family: Parcels transferred
Year
Parcels Sold
without consideration
1969
2
1970
4
1971
2
1972
4
1973
34
1974
12
2
1975
6
1976
[3] 7
3
1977
1
TOTAL
72
5 As determined by the respondent the amounts by which the receipts from the sale of such property exceeded GIC's basis in the property sold were as follows: Gain on sale of
Year
property
1969
$ 11,854.25
1970
6,865.95
1971
6,502.80
1972
7,731.90
1973
100,719.95
1974
27,751.02
1975
17,071.65
1976
35,723.00
1977
2,257.25
Of the land that was transferred without consideration, 2 parcels in 1974 and 1 parcel in 1976 were transferred without consideration by deed from GIC to Marcus A. Garriss, Jr., the son of Dr. Garriss, and his wife. One parcel, titled in GIC, was transferred without consideration to Barbara Garriss, the daughter of Dr. Garriss, in 1976. All of the deeds of conveyance were in the name of GIC, [4] and at least a portion *714 of the notes given to secure payments due for the land conveyed were made payable to GIC. Others were made payable to Dr. Garriss, individually. In both cases, Dr. Garriss took proceeds from the sales of lots or payments on notes into his personal account and paid expenses associated with the development of the property from the same account. At no time did GIC ever maintain any checking or savings account. During the period from 1969 until May 1976, Dr. Garriss made all decisions in connection with GIC and the development of the Lakeview Park property. Dr. Garriss determined the sales Lakeview Park property. Dr. Garriss determined the sales prices of all lots that were titled in the name of GIC, as well as made decisions with respect to the postponement of collections on outstanding notes. The only asset titled in the name of GIC was the real property comprising the subdivision. Equipment used in the development *715 of the property included two trucks and two backhoes. In a notice of deficiency issued to Dr. Garriss for his individual return for the taxable year ending December 31, 1974, respondent did not contest the ownership of or the deduction taken for depreciation of such equipment. Petitioner Lois R. Garriss married Dr. Garriss on January 20, 1976. Also in early 1976, because record title to the subdivision property was held in the name of GIC, the corporate charter of which had been cancelled 9 years earlier, questions arose with respect to the validity of transfers by the corporation of title to property. Dr. Garriss was advised by counsel that GIC should apply for reinstatement of its charter under N.C. Gen. Stat. sec. 55-164.1. Accordingly, Dr. Garriss, along with his son, Marcus A. Garriss, Jr., and daughter, Barbara Garriss, as incorporators, executed new articles of incorporation for GIC. The stated purpose of that document was: (a) to re-incorporate on behalf of a predecessor corporation with the same name, and to succeed to all of the rights and to assume all of the obligations and liabilities of the original corporation, including all liability for prior taxes, fees and *716 penalties. (b) to carry on and transact a general real estate business, including the right to take, acquire, buy, lease, hold, sell, convey, mortgage, exchange and otherwise deal in and dispose of real property, chattels and personal property of every nature and description whatsoever, or any right or interest therein; * * *. Such articles were filed with, and accepted by, the Secretary of State of North Carolina on February 9, 1976. The three incorporators were named directors of the newly reincorporated GIC. Stock in the new corporation was to be issued to holders of stock in the prior corporation in the same number of shares that they held in the prior corporation. At the time of reincorporation, no organizational meeting was held on behalf of GIC. Following reincorporation, there was no change in the manner in which Dr. Garriss operated GIC or how he handled the sale of lots in the subdivision that were titled in the name of GIC. He continued to deposit payments made on the sale of lots and on the notes held in the name of the corporation into his personal account and he paid all expenses from his persnal account. On May 5, 1976, Dr. Garriss transferred approximately half *717 of the stock in GIC to his wife.She became the owner of virtually all of the GIC stock on August 20, 1976 when Dr. Garriss transferred the remainder of his stock in the corporation to her. On becoming controlling shareholder, Mrs. Garriss began to exercise control over the affairs of the corporation. On September 24, 1976, a 1.5-acre parcel of land in the subdivision was transferred by GIC to Mrs. Garriss without consideration. [5]
Dr. Garriss and Lois Garriss separated on January 31, 1977 and were divorced on February 12, 1978 pursuant to an order of the Halifax County, North Carolina, District Court. On April 28, 1977, Mrs. Garris removed Dr. Garriss as a director and officer of GIC and made herself president of GIC and made herself and her children from a previous marriage the directors of GIC. On August 10, 1977 GIC filed suit against its former president, Dr. Garriss, in North Carolina Superior Court alleging that he has mismanaged GIC. The corporation sought an accounting, the return of corporate property and damages in the amount of $ 100,000.On March 29, 1978, the court concluded that *718 GIC was not a bona fide corporation under state law and that all assets owned by GIC as of March 29, 1978 were the property of Dr. Garriss and Mrs. Garriss equally. During 1977 Mrs. Garriss received $ 11,189.92 for payment on notes that originally were made payable to GIC. She reported the receipt of $ 2,607 of this amount on her 1977 return. On October 15, 1973 a house and lot held in the name of GIC were conveyed by a deed executed for GIC by Dr. Garriss as president of GIC. The house and lot were sold for $ 65,000, which amount was represented in part by a note payable to GIC and secured by a deed of trust in favor of GIC. The purchasers of that house and lot were Mr. and Mrs. Rook. The deed by which GIC conveyed the house and lot to the Rooks was dated October 15, 1973 and was recorded at the Halifax County Register of Deeds Office, Halifax, North Carolina. On December 23, 1976, the Rooks sold that property for $ 65,000, and GIC was made joint payee on a check for $ 52,327.25, which check was intended to satisfy the note referred to above. At that time, Mrs. Garriss received one-half of the proceeds, or $ 26,163.62, from the sale of the Rook property. She reported $ 25,322 *719 of that amount as a dividend on her individual income tax return, Form 1040, for 1976. However, following the determination of the North Carolina Superior Court in March 1978 that GIC was not a separate entity, Mrs. Garriss filed an amended return, Form 1040X, on July 24, 1978. Thereon, she took the position that the money was a tax-free receipt. Deposits were made by Mrs. Garriss to two savings accounts titled at the Rosemary Federal Savings and Loan. Each account was set up by Mrs. Garriss and was titled jointly in the name of Mrs. Garriss and one of her children. During 1977 interest in the amount of $ 139 was credited to the jointly held accounts. Mrs. Garriss used the money in those accounts to pay expenses of the children. GIC received $ 497.03 of interest income during 1976. In his notice of deficiency to GIC, respondent determined that GIC was liable for tax on the gains on the sale of lots in the Lakeview Park Subdivision during all taxable years from 1969 through 1977. In addition, respondent determined that GIC was liable for additions to tax for failure to file timely returns, negligence or intentional disregard of the rules and regulations and failure by a corporation *720 to pay estimated taxes. In his statutory notice to Mrs. Lois R. Garriss, respondent determined deficiencies in tax for 1976 and 1977 and an addition to tax for failure to file a timely return for 1977. OPINION At the outset we are faced with the issue of whether Garriss Investment Corporation was taxable as a corporation for the taxable years 1969 through 1977. Petitioners argue that the finding of the North Carolina Superior Court on March 29, 1978, that GIC was not a bona fide corporation and that property titled in the name of the corporation was owned beneficially in equal shares by Dr. Garriss and Mrs. Garriss, controls in the instant case. [6] *721 Accordingly, petitioners claim that GIC was not a valid corporation and that its existence should be disregarded because it was purely a passive dummy without any business purpose or business activity. In the alternative, if we find that GIC was a valid corporation, petitioners claim that GIC was a corporate agent and that income from the sale of lots in the subdivision is attributable to Dr. Garriss.Finally, petitioners argue that respondent should be equitably estopped from asserting deficiencies against GIC. [7] *722 Respondent, on the other hand, claims that GIC had been in the business of acquiring, developing and selling land since its formation in 1961. It was a valid corporation, properly taxable as such, during the years 1969 through 1977, despite its failure to comply with various requirements of North Carolina law. We must determine whether GIC was, in its nature and activities, a corporation or other entity that is taxable as a corporation under the standards set out in the Internal Revenue Code. Section 7701 of the Code provides: Sec. 7701(a). When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof-- (3) Corporation.--The term "corporation" includes associations, joint-stock companies, and insurance companies. While Federal law determines tax consequences, it is state law *723 that is relevant to determine "whether the legal relationships which have been established in the formation of an organization are such that the standards [set by the Code] are met. Thus, it is local law which must be applied in determining such matters as the legal relationships of the members of the organization among themselves and with the public at large, and the interests of the members of the organization in its assets." Sec. 301.7701-1(c), Proced. & Admin. Reg. [8] *724 In May 1961 GIC was granted a corporate charter by the Secretary of State of North Carolina. In December 1962 the charter was suspended pursuant to N.C. Gen. Stat. sec. 105-230 for the failure to file state corporate income and franchise tax returns and to pay such taxes. Under North Carolina law, the corporate existence is held in abeyance for a period of 5 years after such suspension. During that period, the corporate charter can be reinstated through compliance with the filing and payment requirements set out in N.C. Gen. Stat. sec. 105-232. If such compliance is forthcoming, the suspension is lifted and erased from the state records. However, if the 5-year period expires without such compliance, the reinstatement privilege is forever lost and the corporation becomes nonexistent. Accordingly, after the 5-year period lapsed in 1967, Garris Investment Corporation no longer existed as a legal corporate entity under state law. See Knoxville Truck Sales & Service, Inc. v. Commissioner,10 T.C. 616, 620 (1948). *725 Therefore, during and subsequent to the year 1969, it did not enjoy the rights, privileges and protections of corporate status under North Carolina law until its reincorporation in February 1976. [9]
However, as the status of an organization for Federal tax purposes must be determined independently of the organization's status under state law, there remains for our consideration the question whether GIC was an association taxable as a corporation under section 7701(a)(3) from 1969 until the 1976 reincorporation.The regulations under section 7701 discuss the characteristics of organizations that are taxable as corporations: Sec. 301.7701-2. Associations. (a) Characteristics of corporations. (1) The term "association" refers to an organization whose characteristics require it to be classified for purposes of taxation as a corporation rather than as another type of organization such as a partnership or a trust. There are *726 a number of major characteristics ordinarily found in a pure corporation which, taken together, distinguish it from other organizations. These are (i) Associates, (ii) an objective to carry on business and divide the gains therefrom, (iii) continuity of life, (iv) centralization of management, (v) liability for corporate debts limited to corporate property, and (vi) free transferability of interests. Whether a particular organization is to be classified as an association must be determined by taking into account the presence or absence of each of these corporate characteristics. The presence or absence of these characteristics will depend upon the facts in each individual case. * * * An organization will be treated as an association if the corporate characteristics are such that the organization more nearly resembles a corporation than a partnership or trust. See Morrissey et al. v. Commissioner (1935) 296 U.S. 344. [Sec. 301.7701-2, Proced. & Admin. Regs.] In Morrissey v. Commissioner,296 U.S. 344, 356 (1935), the Supreme Court said that "'[a]ssociation' implies associates. It implies the entering into a joint enterprise * * * for the transaction of business." Subsequently, *727 we considered the Morrissey standards in Knoxville Truck Sales & Service, Inc. v. Commissioner,supra, wherein we were faced with facts similar to those before us in the instant case. In that case, the taxpayer was a truck sales corporation that was incorporated under the laws of Tennessee in 1939. It was owned and operated as a corporation by an individual proprietor. On April 23, 1942 the corporate charter was revoked by the state for nonpayment of taxes. After that date, the proprietor continued to operate the business in the corporate name. We held that the corporation was a valid taxable entity prior to April 23, 1942. However, after that date, the business was under the sole ownership, management and control of the proprietor, and it lacked the necessary attributes to be considered an "association" for tax purposes. We concluded that "* * * the profits of the business would have been taxed at all times to its sole owner individually, but for the petitioner's formal incorporation under the laws of the State of Tennessee. We think that they were so taxable [to the sole owner] after its corporate existence ceased." 10 T.C. at 622. With respect to the instant case, the fact *728 of the matter is that Dr. Garriss owned virtually all of the stock of GIC at all times from 1969 to 1976. No corporate meetings were held. The business of developing and selling the land was in the sole control of Dr. Garriss. He had no associates, there was no joint enterprise involved in the conduct of the business and, due to the absence of state recognition of the corporation, he presumably would have been individually liable for any corporate debts incurred during those years. Dr. Garriss took some of the notes from the sale of Lakeview Park property in his own name and made collections of both the notes in his own name and those in the corporate name. As no bank accounts were maintained in the corporate name, he deposited the proceeds from such notes in his personal bank account and paid all expenses related to the subdivision from his accunt. In sum, the evidence indicates that the affairs of GIC were conducted by Dr. Garriss as if he were the true owner of the property. He made all decisions, conducted all transactions, and furnished and received all money related to the business. Dr. Garriss took no actions that would convince us of the viability of GIC as a corporation *729 from 1969 through February 1976. The only indicia of continuing corporate existence was that nominal title to the land was in the corporate name. Under these circumstances, we believe that the continued operation of GIC did not give rise to an association that was taxable as a corporation under the requirements of the regulations. [10]
Having determined that GIC was not taxable as a corporation prior to its reincorporation on February 9, 1976, we next must consider whether GIC was a taxable entity subsequent to that date. The record in this case shows that no changes were made in the ownership of GIC stock from the date such stock was first issued, October 23, 1961, until about 3 months after the date of reincorporation. On May 5, 1976, all of the formerly issued stock was cancelled and approximately 50 percent of the stock in the new corporation was issued each to Dr. Garriss and Mrs. Garriss. In addition, corporate minutes indicate that meetings *730 of the board of directors of GIC were held for the first time since before the corporate charter was cancelled in 1967. It is our opinion that, after the reincorporation, GIC again became a viable entity properly taxable as a corporation. Dr. Garriss relinquished his virtual sole control of the stock. In fact, the continued existence of GIC as a corporation up to the present time under the control of Mrs. Garriss indicates the "continuity of life" that is required by the regulations. The corporation had a valid business purpose in that it was reincorporated in order to clear title to property. Furthermore, the renewed interest in holding meetings of the board of directors indicates centralization of management and continuity of corporate life. In view of the foregoing factors, coupled with the recognition by the State of North Carolina of the corporate charter, we find that GIC was taxable as an independent corporate entity after February 9, 1976. Petitioners claim that the existence of GIC after 1976 should be disregarded because it was purely a passive dummy, or in the alternative, that GIC was the corporate agent of its shareholders. We believe that the corporate activity following *731 the reincorporation clearly indicates that GIC was not a passive dummy. The reincorporation was accomplished to endow GIC with the responsibility for clearing title to property. See generally Strong v. Commissioner,66 T.C. 12 (1976), affd. 553 F.2d 94 (2d Cir. 1977), where we held that the holding of title by a corporation to avoid state usury laws was a valid business purpose and that the extensive activities undertaken by the corporation required recognition of its existence as a separate taxable entity. In effect, we believe that GIC was reincorporated for the business purpose of clearing title to the Lakeview Park Subdivision. This fact is evidenced by the testimony of Dr. Garriss's lawyer that a new charter was filed to relieve problems that had arisen because title to the land was in the name of a defunct corporation. In addition, the renewed vitality of the corporation is evidenced in the minutes of a special meeting of the shareholders of GIC on April 28, 1977, which indicate that Dr. Garriss and his children were removed as directors and Mrs. Garriss and her children, Michael P. Flack and Elizabeth Ann Flack, were elected as the new board of directors. In sum, Dr. Garriss *732 no longer controlled either the stock in the corporation or the business activity with respect to the property. The bitter dispute over control of GIC that took place between Dr. Garriss and Mrs. Garriss after their separation is evidence of the important business function that the corporation must have served since its reincorporation. Thus, we reject petitioners' "passive dummy" argument. Furthermore, we believe that petitioners' corporate agency argument is equally without merit. This Court recently addressed the issue of corporate agency in Roccaforte v. Commissioner,77 T.C. 263 (1981). In that case we found a written agency agreement between the corporate agent and the partnership principal; a relationship that clearly was disclosed to third parties with whom the corporation dealt; evidence that the partners would be bound by actions of its corporate agent; and corporate activity consistent with the normal duties of an agent. Suffice it to say that the relationship between GIC and its shareholders did not have the indicia consistent with an agency relationship. There was no agency agreement, no clear disclosure to third parties, and no activity by GIC that would convince *733 us that it was acting as an agent. [11] Accordingly, we find that the reincorporation served to re-endow GIC with all of the rights and protections of corporate status under North Carolina law and signaled the beginning of its status as a taxable corporation under section 7701. Having determined that GIC is taxable as a corporation for the period following February 9, 1976, we next must consider petitioners' allegation that respondent incorrectly determined GIC's taxable income for 1976 and 1977. Unless otherwise provided, the taxpayer bears the burden to prove that the Commissioner's determination was incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure. The Commissioner's deficiency determination is presumptively correct. Welch v. Helvering,290 U.S. 111 (1933). In the instant case, petitioners put forth no testimonial or documentary evidence to show that GIC did not receive income in the amounts determined by respondent *734 for 1976 and 1977. However, we note that the sale of land to Robert R. Wilkie and Evelyn P. Wilkie took place on January 27, 1976, approximately 2 weeks prior to the reincorporation of GIC on February 9, 1976. Accordingly, we hold that respondent's determination of GIC's taxable income for 1976 and 1977 was correct except that the $ 9,745.55 gain on the sale of the Wilkie parcel should not be attributed to GIC. Third, we consider whether petitioner GIC is liable for the additions to tax under section 6651(a)(1) for failure to file timely returns, under section 6653(a) for negligence or intentional disregard of the rules and regulations, and under section 6655 for failure by a corporation to pay estimated income tax. Respondent determined that the additions to tax prescribed in sections 6651(a)(1) and 6653(a) apply for all taxable years from 1969 through 1977, and that the section 6655 addition applies for the 1973 to 1977 tax years. In light of our earlier findings, we need only consider whether the additions apply for 1976 and 1977. With respect to the addition to tax for failure to file timely returns, section 6651(a)(1) requires the addition unless the failure to file is due *735 to reasonable cause and not due to willful neglect. The burden of proof is on petitioner. Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974).The parties stipulated that no Federal income tax returns ever were filed by GIC. Having found that GIC properly was taxable as a corporation for 1976 and 1977, and absent any showing by petitioner of reasonable cause for failure to file returns for those years, we find that the additions determined under section 6651(a)(1) for 1976 and 1977 were proper. With respect to the addition to tax for negligence or intentional disregard of the rules and regulations under section 6653(a), petitioner GIC bears the burden of proving that the imposition of the addition is erroneous. Bixby v. Commissioner,58 T.C. 757, 791 (1972). As no evidence was put forth by petitioner on this issue, we sustain respondent's determination with respect to 1976 and 1977. Finally, with respect to respondent's determination of the addition to tax under section 6655 for failure by a corporation to make estimated tax payments, we again note that GIC was taxable as a corporation during 1976 and *736 1977. The addition to tax prescribed in section 6655 is imposed whether or not there was reasonable cause for the underpayment, unless one of the exceptions in section 6655(d) applies. Sec. 1.6655-1(a)(1), Income Tax Regs. Because petitioner GIC did not file estimated income tax returns or make estimated tax payments for 1976 and 1977, and it has not shown that any section 6655(d) exception applies, we sustain respondent's determination. Fourth, we must determine whether Mrs. Garriss received dividend income from GIC in 1976 and 1977. Respondent has determined that Mrs. Garriss received $ 26,163.83 of ordinary income on the sale of the Rook property in 1976, representing her 50-percent interest in the property. [12] *737 Respondent also has determined that Mrs. Garriss realized $ 8,582.65 in income in 1977 on the receipt of payments on promissory notes, which arose from the sale of GIC land, that had been transferred to her. In addition, respondent has determined that Mrs. Garriss received a dividend of $ 15,000 from GIC in the form of a tract of land in the subdivision. With respect to the income at issue from the sale of the Rook property, Mrs. Garriss contends that in December 1976 she received one-half of the proceeds from the sale of such property in the form of a nontaxable gift from Dr. Garriss, her husband at the time. The facts indicate that, on the purchase of the Rook house in 1973, Dr. Garriss received a note, secured by a deed of trust, in favor of GIC and representing a portion of the purchase price. When the Rooks sold the property in December 1976, GIC received a check for $ 52,327.25 to satisfy the remaining indebtedness. We have already held that GIC was a valid corporation after February 1976. The facts show that Mrs. Garriss was owner of 358 of the 720-1/2 outstanding shares of GIC stock as of May 5, 1976. *738 Accordingly, we find that GIC actually collected on its note in 1976 and distributed the proceeds to its shareholders in the form of a cash dividend. Lacking any contrary evidence with respect to value, we find that Mrs. Garriss realized $ 26,163.62 of dividend income. See sec. 301(b)(1)(A). [13] Similarly, with respect to payments received in 1977 on promissory notes arising from the sale of GIC land, we note that Mrs. Garriss had been a substantial shareholder in GIC since May 1976. She does not contend that the payments were not received, but rather that the notes were received as a gift or property settlement from Dr. Garriss during their marriage. There was no evidence *739 presented with respect to when Mrs. Garriss received the notes. We only know that Mrs. Garriss received total cash payments of $ 11,189.92 when payments on the notes were collected by GIC in 1977. We therefore find that GIC collected the money and distributed it to Mrs. Garriss as a dividend in 1977. Finally, with respect to the transfer of a tract of land, Mrs. Garriss claims that Dr. Garriss transferred the parcel to her on September 24, 1976 as a gift by reason of their marriage. The evidence shows, however, that the lot was transferred by GIC to Mrs. Garriss. There was no evidence that Dr. Garriss owned the land, that GIC passed the land as a dividend to Dr. Garriss followed by a gift from him to Mrs. Garriss, or any evidence with respect to the value of the land. In fact, Mrs. Garriss owned almost all of the stock of GIC at the time of the transfer. Accordingly, we uphold respondent's determination that Mrs. Garriss received a dividend of $ 15,000 in the form of land. Fifth, we consider whether Mrs. Garriss received $ 139 of unreported interest income during 1977. Mrs. Garriss testified that she set up a savings account for each of her two children at the Rosemany Federal *740 Savings and Loan and made gifts to each child by depositing money in the accounts. Each account was listed in the joint name of petitioner and one child. Mrs. Garriss testified that she later withdrew the money when it was needed to pay expenses for the children. When a parent makes a gift to a child under the Uniform Gifts to Minors Act, N.C. Gen. Stat. sections 33-68 to 33-77, income from the gift that is used to support the child is taxable to the person who is legally liable for such support. [14] As there was no evidence to show that Mrs. Garriss did not have a support obligation for her children and no evidence to contradict her testimony that she used the money for the support of the children, we find that Mrs. Garriss retained control over the accounts and used the money therein to satisfy her support obligation. See Crane v. Commissioner,49 T.C. 85, 90 (1967). Accordingly interest credited to the accounts in 1977 is taxable to Mrs. Garriss. Finally, we consider whether Mrs. Garriss is liable for the addition to tax under section 6651(a)(1) *741 for failure to file a timely income tax return for 1977. Mrs. Garriss received an extension of time until June 15, 1978 to file her 1977 return. An application for a further extension of time to file was received by the Internal Revenue Service on June 19, 1978. On June 28, 1978 the application was denied because the request was made for no important reason and only to gain time. See sec. 6081(a). Petitioner then filed her 1977 return on July 7, 1978. We sustain respondent's determination with respect to the addition to tax for failure to file a timely return. Petitioner offered no evidence of reasonable and legitimate reason for filing her 1977 return after June 15, 1978. In fact, the reason stated for her request for further extension of time was frivolous and her request was properly denied. Accordingly, we sustain respondent's determination. Decisions will be entered under Rule 155.
Footnotes
1. Mrs. Lottie C. Garriss died on Dec. 3, 1966.
2. The record indicates that the stock evidenced by Certificate No. 8 was transferred to Mrs. Lois R. Garriss on Aug. 20, 1976, but that a new certificate to evidence such transfer was not issued by GIC until June 15, 1977.↩
3. Of the parcels sold, one parcel was sold on January 27, 1976 to Robert R. Wilkie and Evelyn P. Wilkie. The other 6 parcels were sold after the date of the reincorporation.↩
4. Although the parties stipulated that all of the deeds of conveyance were in the name of GIC as transferor, of the deeds submitted into evidence as joint exhibits of the parties, one shows Dr. M.A. Garriss and one of his former wives, Florence Garriss, as transferors.↩
5. In 1981, Mrs. Garris sold the same parcel to an independent third party for $ 13,000.↩
6. We note that the judgment upon which petitioners base their argument was one of a trial-level state court. It is well established that when the application of a Federal statute is involved, Federal authorities are not bound by the decisions of a state trial court that bear on the property interests involved. See Commissioner v. Estate of Bosch,387 U.S. 456, 465↩ (1967). Accordingly, while the North Carolina state court may have decided the rights of Dr. Garriss and Mrs. Garriss vis-a-vis the corporation for purposes of the pending action for return of property, its judgment is not determinative in this Federal civil tax proceeding. 7. We need not consider petitioners' equitable estoppel argument except to note that on May 18, 1981, more than 3 months after the trial and 2 weeks after filing their brief in this case, petitioners filed a Motion to Amend the Petition. In their motion, petitioners, for the first time, raised the contention that respondent should be estopped from asserting the deficiencies now under our consideration because of positions purportedly taken during prior audits of other taxpayers.No evidence was submitted at trial or with the motion to support the assertions contained therein. After considering petitioners' motion and respondent's notice of objection to the motion, we issued an order on June 15, 1981 denying petitioners' motion because of our concern for surprise and unfair prejudice. See Estate of Horvath v. Commissioner,59 T.C. 551, 556↩ (1973). As such, petitioners' final argument is not properly before the Court at this time.
8. The following language, although stricken from the regulations by T.D. 7515, 1972-2 C.B. 482, 483, effective Oct. 17, 1977, provides guidance in the instant case: Nevertheless, the labels applied by local law to organizations, which may now or hereafter be authorized by local law, are in and of themselves of no importance in the classification of such organizations for the purposes of taxation under the Internal Revenue Code. Thus, a professional service organization, formed under the law of a State authorizing the formation by one or more persons of a so-called professional service corporation, would not be classified for purposes of taxation as a "corporation" merely because the organization was so labeled under local law. See Morrissey et al. v. Commissioner,296 U.S. 344 (1935). The classification in which a professional service organization belongs is determined under the tests and standards set forth in §§ 301.7701-2, 301.7701-3, and 301.7701-4↩.
9. We need not, and do not, decide whether GIC was a corporation or an association for Federal income tax purposes prior to 1969. Neither do we decide if or whether there was a constructive liquidation in 1967, or what would be the consequences of such a liquidation.↩
10. See generally Wootan v. Commissioner, T.C. Memo. 1955-191, wherein at a time prior to the promulgation of the regulations under sec. 301.7701-1↩, -2, proced. & Admin. Regs., this Court faced a factual setting similar to that which we face here.
11. We take note of the inconsistency of petitioners' claims, on one hand, that GIC should be disregarded because it served no business purpose and, on the other hand, that the corporation was a valid entity that served the function of corporate agent.↩
12. On her original 1976 return, petitioner reported $ 25,322 of taxable dividend income from the sale of the Rook house. On her amended 1976 return, she claimed that the $ 25,322 was a tax-free receipt to her because, based on the North Carolina state court ruling, GIC was not a bona fide business corporation.Accordingly, respondent has determined that Mrs. Garriss underreported on her original return $ 841.43 of income from the sale of the Rook property and that her entire 50-percent share of the proceeds properly were taxable to her.
13. In her petition, Mrs. Garriss contends that respondent erred in asserting a deficiency of $ 841.83 on the Rook note and in "not allowing the Petitioner's refund claim as to the same transaction." We assume that petitioner refers to the claim for a refund that appears on her amended return, Form 1040X, for 1976. Having found that the total amount that Lois received from GIC on GIC's receipt of payment of the Rook note constituted dividend income to her, we find that respondent correctly denied the refund claim.↩
14. See Rev. Rul. 56-484, 1956-2 C.B. 23; Friedman v. Commissioner,T.C. Memo. 1968-145, affd. per curiam 421 F.2d 658↩ (6th Cir. 1970).