WILLIS W. DICKEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dickey v. Commissioner
Docket No. 7425-78.
United States Tax Court
T.C. Memo 1982-77; 1982 Tax Ct. Memo LEXIS 669; 43 T.C.M. (CCH) 553; T.C.M. (RIA) 82077; February 16, 1982. James M. Kamman, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to the tax under section 6653(b) [1] as follows: Taxable
Deficiencies in
Additions to Tax
Year
Federal Income Tax
Under sec. 6653(b)
1971 [2]
$ 3,140
$ 1,570
1972
5,543
2,772
1973
3,991
1,996
*670 The sole issue for decision is whether petitioner is liable for the section 6653(b) addition to tax for each of the years in issue. FINDINGS OF FACT Petitioner Willis W. Dickey filed a timely joint Federal income tax return with his then wife for the year 1971 and filed timely individual Federal income tax returns for 1972 and 1973, all such returns being filed at the Internal Revenue Service Center, Fresno, California. At the time he filed the petition in this case, petitioner's residence was Thousand Oaks, California. Respondent's answer affirmatively alleged that petitioner had filed Federal income tax returns for 1971 through 1973 with fraudulent intent to evade taxes. Petitioner did not file a reply with the Court as permitted by Rule 37, Tax Court Rules of Practice and Procedure, [3] and the allegations in respondent's answer were deemed denied under Rule 37(c). In preparation for trial, respondent served petitioner with requests for admissions under Rule 90 to which petitioner responded in part. [4] Respondent also served petitioner with written interrogatories *671 pursuant to Rule 71 and a request for the production of documents pursuant to Rule 72. Petitioner did not respond or make objections to any of respondent's requests. The Court granted respondent's motions and issued an order compelling production of documents and responses to the interrogatories. Petitioner did not comply with the Court's order. The Court then ordered petitioner to show cause why his case should not be dismissed pursuant to Rule 104(c)(3) and Rule 123(b) for failure properly to prosecute and failure to comply with an order of this Court. The show cause order did not cover the additions to tax under section 6653(b) as to which respondent has the burden of proof. When this case was called from the calendar, and again when the case was called for trial, there was no appearance by or on behalf of petitioner. The *672 order to show cause was made absolute, with decision to be entered for the full amount of the deficiencies for 1971, 1972, and 1973, as set out in the statutory notice. The issue remaining for decision is whether petitioner is also liable for the additions to tax under section 6653(b) as to which respondent has the burden of proof. Respondent adduced testimony and documentary evidence at the trial. During each of the years in question, petitioner kept no formal or ordinary books and records. Respondent reconstructed petitioner's income from bank statements, canceled checks, and check registers, using the specific items method. Petitioner used approximately eight different bank accounts (personal, business and trust accounts) and made substantial transfers between the various bank accounts. [5] Respondent determined that petitioner made total bank deposits to the various bank accounts of $ 50,542.54 in 1971, $ 153,869.58 in 1972, and $ 153,300.93 in 1973. After adjustments for non-income items and for income reported on the returns, respondent determined that petitioner had unreported income of $ 9,061.59 for 1971, $ 31,246 for 1972, and $ 26,775 for 1973. In the statutory *673 notices, certain additional adjustments were made that resulted in unreported taxable income of $ 9,384 for 1971, $ 29,489 for 1972, and $ 26,775 for 1973. See footnote 5. We will discuss below the specific items of unreported income for each year. 1971
In 1971, petitioner performed services for the Los Angeles Times for which he was paid $ 516.82. He was also paid a total of $ 681 for the sale of paintings to Western Mortgage Co. and Dollar a Day Car Rental. Neither of these amounts was reported on his tax return for that year. In February of 1971, petitioner began an insurance business known as W & J Dickey, Inc., which was operated as a sole proprietorship.Between November 2, 1971 and December 29, 1971, petitioner made four deposits totaling $ 721.27 in City National Bank Account No. XXX-XX4-391, one of his personal bank accounts. These amounts were commissions from insurance *674 sales and were not reported on petitioner's tax return for that year. Petitioner also deposited $ 3,827.39 in Account No. XX-XX6-359, one of petitioner's personal accounts with the Ahmanson Bank and Trust Company. That sum represented commissions that petitioner did not report on his tax return. There was another amount of either $ 336 or $ 906.23 deposited in another Ahmanson account that was for commissions on insurance sales and not reported on petitioner's return. From October through December of 1971, petitioner withdrew a total of $ 2,640.90 from his business account at City National Bank (Account No. XXX-XX3-704), and redeposited $ 1,000 of that amount in a personal account at Ahmanson Bank and Trust Company (Account No. XX-XX6-359) and used the balance for a trip he and his then wife took to Europe. These draws from the business account were used for personal expenses and represent income that was not reported on the 1971 return filed by petitioner and his wife. Petitioner did not report any income from his insurance business, from his work for the Los Angeles Times, or from any other business activity on his 1971 Federal income tax return. No Schedule C was filed *675 with that return. The only income reported for that year was $ 7,755.37, the amount reflected in the Wage and Tax Statement (W-2) for petitioner's wife Jonie W. Dickey. In 1971, petitioner sold 50 shares of Homestake Mining stock at a loss. He reported the transaction as a sale of 100 shares of stock and thereby doubled the loss claimed on his tax return. 1972
In May of 1972, petitioner sold a painting for $ 400.25 and deposited the proceeds in a personal account at the City National Bank (Account No. XXX-XX4-391). This amount was not reported on his 1972 Federal income tax return. In 1972 petitioner also purchased a house in Bel Air, California, for over $ 80,000. He withdrew $ 10,000 from his business account with City National Bank (Account No. XXX-XX3-704) for part of the down payment. An additional $ 5,000 was withdrawn from another bank account to add to the down payment. On March 7, 1972, petitioner presented a statement of net worth to Home Savings and Loan in connection with his purchase of the house. The statement signed by petitioner listed an annual income from his insurance business of $ 60,000. Petitioner's Schedule C for 1972 reported gross receipts *676 from his insurance business of $ 4,007, no salary payments, and a net loss of $ 6,525 for the year. Petitioner also made a practice of paying personal expenses from his business accounts. Between March 23 and October 5, 1972, he withdrew $ 3,878.15 from a business account at City National Bank (Account No. XXX-XX3-704) to purchase an automobile, pay rent (before house purchase), and make four loan payments. From August 3 through December 21, 1972, petitioner wrote at least 11 checks from a business account (Account No. XXX-XX4-507) at United California Bank for personal reasons. These 11 checks totaled $ 2,103.03. Petitioner also wrote several checks on his business trust account at Security Pacific National Bank (Account No. XXX-XX9-819) to pay for personal expenses. Petitioner also deposited $ 3,215.23 into his personal account at Ahmanson Bank and Trust Company (Account No. XX-XX6-359). None of these amounts were included in the gross receipts on petitioner's Schedule C nor otherwise reflected in the income reported on his 1972 tax return. 1973
In 1973 petitioner made regular deposits into his personal account at Ahmanson Bank and Trust Company (Account No. XX-XX6-052), *677 totaling $ 26,391.49. These deposits were transfers from one of petitioner's business trust accounts, were used for petitioner's personal expenses, and were not reflected on his 1973 tax return. Petitioner's Schedule C for 1973 reported gross receipts of only $ 4,500 from petitioner's insurance business, no salary payments, and a net loss of $ 12,832 for the year. Petitioner reported no other amounts or sources of income on his 1973 return. Another specific item examined for 1973 was the payment of petitioner's property taxes. On April 10, 1973, petitioner paid $ 883.23 from his personal account (Account No. XXX-XX5-462) at Crocker National Bank for half of his property taxes. The other half was paid by one of his business trust accounts. Petitioner also used his business account at United California Bank to pay for personal items. Between January 26, 1973 and August 1, 1973, petitioner wrote four checks totaling $ 4,000 for personal expenses. Petitioner signed a personal financial statement to Ahmanson Bank and Trust Company, dated December 31, 1973, which listed net business income of $ 4,000 and dividend and interest income of $ 2,000. Petitioner reported no dividend *678 or interest income on his 1973 Federal income tax return. The house petitioner purchased in 1972 had an area of 4,700 square feet. The monthly mortgage payments were between $ 415 and $ 450, and the annual property taxes were approximately $ 2,300. Petitioner's 1972 Federal income tax return did not reflect any deductions for interest payments or property taxes with respect to this house, but he did claim a rent reduction of $ 1,268 on his Schedule C. In 1973 petitioner did not deduct rent but deducted depreciation and taxes on his Schedule C. He claimed his house as his business office and deducted 60 percent of his expenditures as business expenses. In that year, petitioner paid some of the monthly mortgage payments and one half of the property taxes from a business account. Petitioner deducted 60 percent of the taxes and depreciation as business expenses on his Schedule C. Respondent reduced the percentage allocable to business to 40 percent. In each of the years in issue, petitioner claimed dependency exemptions for his children. For 1971, he and his then wife claimed exemptions for four children on their joint return. In 1972 and 1973, petitioner claimed dependency *679 exemptions for three of the children on his individual tax returns. These children were living with their mother, petitioner's former wife, during those years. The only evidence to substantiate petitioner's claim that he provided support to any of the children was one check for $ 25 that was paid to one of the children. Petitioner's tax returns for 1972 and 1973 were prepared by Adam Novina, who testified at the trial. Petitioner supplied Mr. Novina with all of the information that was reported on the tax returns, as filed. Mr. Novina understood that the information he received represented all of the information in regard to petitioner's income and expenses. Mr. Novina had no other information except what petitioner gave him. OPINION The only issue in this case is the fraud addition. Section 6653(b) provides for an addition to tax of 50 percent of the underpayment if any part of the underpayment is due to fraud. Respondent has the burden of proving by clear and convincing evidence that some part of the underpayment of tax for each year is due to fraud with intent to evade tax. Section 7454(a); Rule 142(b); Ruidoso Racing Association v. Commissioner,476 F. 2d 502, 505 (10th Cir. 1973). *680 Fraud as used in section 6653(b) means "intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing." Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968). In order to establish fraud, respondent must show that the taxpayer filed his return with the specific intent to evade a tax believed to be owing. Wilson v. Commissioner,76 T.C. 623, 634 (1981). As we stated in Otsuki v. Commissioner,53 T.C. 96 at 106 (1969): Fraudulent intent can seldom be established by a single act or by direct proof of the taxpayer's intention. It is usually found by surveying his whole course of conduct and is to be adduced as any other fact from all the evidence of record and reasonable inferences properly to be drawn therefrom. Petitioner failed to report sources of income as well as substantial amounts of income during the years in issue. The consistent understatement of substantial amounts of income over several years in strong evidence of fraud. Merritt v. Commissioner,301 F. 2d 484, 487 (5th Cir. 1962); Schwarzkopf v. Commissioner,246 F. 2d 731, 734 (3d Cir. 1957); *681 Vannaman v. Commissioner,54 T.C. 1011, 1018 (1970). Petitioner's failure to report income from his insurance business, the sale of paintings, and his work for the Los Angeles Times are all evidence of fraudulent intent. Baumgardner v. Commissioner,251 F. 2d 311, 323 (9th Cir. 1957); Parsons v. Commissioner,43 T.C. 378 (1964). Furthermore, petitioner overstated his loss on the sale of stock. Although he actually sold shares of stock, he overstated the number of shares sold and thereby increased his loss.
The only documents from which respondent could reconstruct petitioner's income were canceled checks, check registers, and bank statements. Petitioner's failure to keep books and records is another indication of his fraudulent intent. Safra v. Commissioner,30 T.C. 1026, 1036 (1958); Arlette Coat Co. v. Commissioner,14 T.C. 751, 756 (1950). Petitioner used several bank accounts and transferred money from one account to another. He regularly paid personal expenses from his business accounts and did not report these items as income. These activities are additional evidence that petitioner knew *682 what he was doing and that he fraudulently intended to evade tax. [6]
Further evidence of petitioner's fraudulent intent is shown by the financial statements he submitted. The statement submitted March 7, 1972, indicated an annual income from his insurance agency of $ 60,000.This statement was submitted before preparation of petitioner's 1971 Federal income tax return, on which he did not report any business income or any other income. The financial statement dated December 31, 1973, indicated net business income of $ 4,000 and dividend and interest income of $ 2,000 for 1973. On his 1973 return, petitioner reported no interest or dividend income and reported a business loss of $ 12,832.These inconsistencies are also indicative of petitioner's fraudulent intent. [7]
In 1972 and 1973, petitioner claimed dependency exemptions for his children who lived with his former wife. There was no evidence that petitioner contributed to their support. We have no doubt that petitioner knew that he was not entitled to the exemptions he claimed. *683 It has been held that claiming false dependency exemptions is evidence of fraud. [8]
Respondent has proved by clear and convincing evidence that petitioner had a fraudulent intent to evade tax during each of the years in question. Petitioner consistently understated substantial amounts of income; he failed to keep adequate books and records; for two of the three years he took dependency exemptions to which he was not entitled; he submitted financial statements indicating earned income substantially higher than he reported on his return; he made substantial personal expenditures and transfers from business accounts to personal accounts; and he failed to report sources of income as well as substantial sums of income. Petitioner's entire course of conduct leads us to conclude that respondent has met his burden of proving fraud. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, unless otherwise noted.↩
2. In 1971 Willis W. Dickey filed a joint return with his wife Jonie W. Dickey. While the deficiency notice for that year was mailed to both spouses, the section 6653(b) addition to tax was not asserted against her. In 1972 they were divorced. Willis W. Dickey filed individual Federal income tax returns for 1972 and 1973, and the statutory notice for those years was addressed only to him. Only Mr. Dickey petitioned the Court in this case.↩
3. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
4. Prior to the trial respondent did not apply to the Court to review the sufficiency of petitioner's answers or objections, as permitted by Rule 90(d). Accordingly, at the trial the Court denied respondent's motion to deem all of the requested admissions as admitted, but the Court has of course treated petitioner's partial responses as admissions.↩
5. For that reason it was difficult for respondent to use the bank deposits method of reconstructing income. However, respondent used the bank deposits method as a backup or check on the general accuracy of the specific items method. The results under the two methods were reasonably close.↩
6. See Hagerty v. Commissioner,T.C. Memo. 1981-234↩.
7. See Wootan v. Commissioner,T.C. Memo. 1955-191↩.
8. See Wewend v. Commissioner,T.C. Memo. 1959-68; McCarthy v. Commissioner,T.C. Memo. 1957-194↩.